# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | | |
|---|---|---|
| ANTHONY CROSS, | ) | 3:13-cv-00433-MMD-WGC |
| Plaintiff, | ) | **ORDER** |
| vs. | ) | **re: Doc. # 95** |
| RON JAEGER, et al., | ) | |
| Defendant. | ) | |

Before the court are Plaintiff's Motion for Order To Compel Answers to Admissions from Defendant Ron Jaeger [Second Set] (Doc. # 95[1]), Defendant Jaeger's Opposition (Doc. # 114) and Plaintiff's Reply (Doc. # 123).

Prior to embarking on resolution of what largely appears to have evolved into a semantical dispute between Plaintiff and Defendant with regard to the term "shift supervisor, the court will re-visit the screening order entered in this matter by District Judge Miranda M. Du. (Doc. # 6.) The Screening Order identified the nature and scope of Plaintiff's allegations which Judge Du allowed to proceed in this matter and will be instructive with regard to the subject of Plaintiff's requests:

> As held in the prior Screening Order [dkt. # 4], Counts I, I-A, V and V-A state claims upon which relief may be granted under the First Amendment and the parallel provision in Article 1, Section 9 of the Nevada Constitution against defendant Ron Jaeger based upon his alleged interference on September 30, 2011, with plaintiff's ability to pursue his disciplinary appeal and emergency grievance. * * *

> [t]he court reiterates and adheres to its prior holding, however, that a mere failure to rule in an inmate's favor and/or to handle a grievance or appeal allegedly properly does not itself constitute retaliation for purpose of First Amendment (or parallel state constitutional) liability and does not otherwise give rise to a viable constitutional claim. *See* dkt. No. 4, at 4.

---

[1] Refers to court's docket number.

(Doc. # 6 at 1-2; emphasis added.)

The screening order further discussed the limits of constitutional protection regarding grievances:

> * * *Plaintiff begins Count I of the amended complaint with a legal argument that he incorporates in all remaining counts. Under Plaintiff's argument, (a) the Nevada Legislature enacted provisions authorizing the executive branch to establish rules governing prisons and these rules are "substantive" with the force of law; (b) a prisoner's efforts to utilize AR 740, which sets forth grievance procedures, is protected by the First Amendment; and (c) the First Amendment applies to the States through the Fourteenth Amendment.
>
> The First Amendment protects an inmate from retaliation for bringing grievances. The First Amendment, however, does not constitutionalize a state corrections department's grievance procedures. Thus, a Nevada state inmate has no First Amendment claim for an alleged violation of AR 740. It is established law that an inmate does not have a constitutional right to have his grievances either decided or processed in a particular manner. *See, e.g., Seely v. Gibbons*, 2013 WL 6440206 (9th Cir. Dec. 10, 2013); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).
>
> Moreover, as held in the prior order, the state statutes relied upon do not purport on their face to establish a private right of action, and it does not appear that either state corrections department regulations or manuals create a private right of action. Merely because a state legislature authorizes an executive department to adopt regulations does not establish that a private right of action is created thereby. Labeling the rules as "substantive" has no talismanic significance in this regard. There is no indication whatsoever in the state statutes cited by plaintiff that the Nevada Legislature intended thereby to provide inmate with an ability to bring a civil action under state law for alleged failures to follow the particular procedures of the prison grievance system under AR 740.
>
> Plaintiff otherwise has not presented actual factual allegations that would tend to establish the deprivation of a protected liberty interest as a threshold requirement for a viable procedural due process claim under the Fourteenth Amendment. *See* dkt. No. 4, at 4-5.
>
> The court therefore will dismiss the deficient claims and proceed forward with the remaining claims. The court finds that allowance of a further opportunity to amend would be futile.
>
> * * *
>
> It is therefore ordered that the Clerk of Court shall file the complaint and that all claims are dismissed without prejudice for failure to state a claim upon which relief may be granted except for the claims under the First Amendment and Article 1, Section 9, of the Nevada Constitution against the defendants <u>for alleged retaliation and/or interference with plaintiff's ability to pursue a disciplinary appeal and grievance</u>.

(Doc. # 6 at 2-3; emphasis added.)

Plaintiff's discovery and his discovery motions must therefore be interpreted against the backdrop of what specific civil rights claims are before this court. That test is commonly referred to as relevance.

Federal Rule of Civil Procedure 26 governs the scope of discovery in civil actions and provides in pertinent part:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense-including the existence, description, nature, custody, condition, and location of any documents or other tangible things and the identity and location of persons who know of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Fed. R. Civ. P. 26(b)(1).

Accordingly, the first limitation on permissible discovery is that it be relevant. *See, e.g., Dowell v. W.T. Griffin*, 275 F.R.D. 613, 617 (S.D. Cal. Aug. 17, 2011) Relevance "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppehnheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 1978 (citing *Hickman v. Taylor*, 329 U.S. 495, 501 (1947)). As applied to this lawsuit and the discovery disputes it has generated, the question before the court is whether Plaintiff's discovery is intended to elicit fact, documents or admissions which pertain to Defendant Jaeger's alleged retaliation and/or his interference with Plaintiff's ability to pursue a disciplinary appeal and grievance.

The court finds that several of Plaintiff's requests for admission pertain to matters which are totally irrelevant to the underlying claims. In that regard, Request # 16 pertains to whether Nevada Department of Corrections (NDOC) regulation identify a shift supervisor is a supervisor of an "entire institution" or is a "mere unit supervisor." (Doc. # 114 at 2.) Whether Defendant Jaeger was a shift supervisor, unit supervisor – or even the warden – is irrelevant. The issue as Judge Du framed it is whether Defendant Jaeger interfered "with Plaintiff's ability to pursue his disciplinary appeal and emergency grievance." Defendant Jaeger has admitted in response to Request for Admission (RFA) #17 that he was "the shift supervisor assigned to a secure building with segregated inmates." (Doc. # 114 at 2.) Whether he was a "mere unit supervisor" or how NDOC Administrative Regulation 740.18 refers to shift supervisors is a semantical argument with no substantive distinction relative to whether his grievance was interfered with.

The only argument which may be made as to the relevance of these and similar requests is whether Defendant Jaeger had "the authority to answer Plaintiff's grievance (emergency) on

3

September 30, 2011, at 14:41 hours." Defendant denied Plaintiff's Request for Admissions, implying he was both a shift supervisor as reflected in his response to RFA #17 and had the authority to respond to or address Plaintiff's grievance. (Doc. # 114 at 2.) Plaintiff's request was therefore properly addressed by the Defendant.

The court notes that in Defendant's opposition to Plaintiffs motion to compel (Doc. # 96), Defendant provided certain NDOC documents defining Shift Supervisor and his/her responsibilities. (Doc. # 115-1 at 4.) The court also notes Defendant Jaeger has stated he does not recall Plaintiff filing any emergency grievance on September 30, 2011, and that neither NDOC's "NOTIS" records nor Plaintiff's grievance file contain one of that date. (Doc. # 115-1 at 8.[2]) He has thus adequately responded to the requests

Finally, the court cannot grant a motion to compel further responses to requests for admissions because Plaintiff may be dissatisfied with the responses or he did not get the responses he wanted to secure. Rule 36(a)(4) only requires that a denial "must fairly respond to the substance of the matter." While a party may move to determine the sufficiency of a response under Rule 36(a)(5), the court finds Defendants' answers to be sufficient.

Thus the disputed Requests pertain to matters irrelevant to the allegations which were allowed to proceed.

Therefore, Plaintiff's motion to compel further answers by Defendant Jaeger to Plaintiff's Second Set of Requests for Admissions (numbers 16, 17, 18, 20, 21, and 22) is **DENIED.**

**IT IS SO ORDERED.**

DATED: March 27, 2015.

                                                           */s/ William G. Cobb*
WILLIAM G. COBB
UNITED STATES MAGISTRATE JUDGE

---

[2] Defendant's responses actually refer to "Defendant's grievance file." However, the court assumes Defendant meant to refer to "Plaintiff's grievance file."