UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

ANTHONY CROSS,            )   3:13-cv-00433-MMD-WGC
                          )
      Plaintiff,          )
                          )   **ORDER**
  vs.                     )
                          )   **re: Docs. ## 178, 182**
RON JAEGER, et al.,       )   **and**
                          )   **Docs. ## 177, 185**
      Defendants.         )
_____)

Before the court is Defendant's Notice of Compliance with Court Order (#168) to which is attached Defendant Jaeger's Second Supplemental Discovery Responses. (Docs. # 178, # 178-1[1].) Plaintiff has replied to Defendant's Second Supplemental Discovery Responses. (Doc. # 182.) Also before the court is Defendant's Response to Court Order #132 (Doc. # 177) and Plaintiff's Reply to Defendant's Response (Doc. # 185).

## I. BACKGROUND

The court addressed multiple discovery disputes then pending between Plaintiff and Defendant on May 22, 2015. (See, Minutes of Proceedings, Doc. # 168.)  Defendant Jaeger was directed to supplement certain discovery responses and has done so in Docs. ## 177, 178 and 178-1.

One of the supplemented discovery responses was Request for Admission (RFA) # 14, which Plaintiff states he accepts. (Docs. ## 178-1 at 3 and 182 at 1.) It is therefore not the subject of this Order.

Plaintiff, however, disputes the adequacy of the supplemental responses to Requests for Production (RFPs) 4 (training documents), and RFPs 2 and 6 (documents pertaining to Defendant's

---

[1] Refers to court's docket number.

status as an Nevada Department of Corrections "shift supervisor"). (Doc. # 182 at 2-7.) This issue was also addressed in Docs. ## 177 and 185.

The court will first address RFP No. 4 (training documents) and will thereafter turn to a discussion of RFP Nos. 2 and 6 which pertain to Defendant Jaeger's status as a "shift supervisor."

## II. DISCUSSION

A.  Request for Production No. 4 (training documents)

Defendant's second supplemental response to RFP # 4 appears as follows:

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 4**

You have contended that you were authorized to answer Plaintiff's emergency grievance on September 30, 2011. In Interrogatory No. 12, Plaintiff asked you to produce any and all documents stating that you were properly trained. Plaintiff is again requesting the documents.

**SUPPLEMENTAL RESPONSE PURSUANT TO COURT ORDER #168 TO REQUEST FOR PRODUCTION NO. 4**

Defendant Jaeger has filed a response to this Court's Order (#132) indicating that he does not assert a qualified privilege for official information. The documents in request No. 4 have been provided to the Warden's office for review. A notice was filed with the Court in compliance with the Court's order.

Doc. # 178-1 at 4.

Plaintiff contends as to the supplemental response to Request #4 that Defendant's counsel initially "conceded there were no such document amongst the document he submitted to the institution's warden's office for Plaintiff to review." As such, Plaintiff requests an order of the court producing a transcript to prove the "concession." (Doc. # 182 at 2.) The issue of the training documents is also discussed by Plaintiff in his Reply logged in the Docket as Doc. # 185.  Plaintiff again contends in # 185 that at the hearing Defendant's counsel "conceded that there were (sic) no information in the documents that verified he was properly trained in regards to the grievance procedure." Plaintiff submits that "in the interest of justice," the court should "obtain a copy of those training documents to settle the dispute the Defendant has created." *Id.*, at 2.

The court finds that a transcript is unnecessary relative to this specific request for production. The request for production asks Defendant to produce documents stating that he (Jaeger) was properly trained. The supplemental response indicates that Defendant Jaeger is no longer asserting a qualified

2

privilege for official information relative to his training documents and that "the documents in Request No. 4 have been provided to the Warden's office for review." (Doc. # 178-1 at 4.) Whether Defendant's counsel suggested or ever represented that there are no training documents is essentially irrelevant. Additionally, the court would note that no support for Plaintiff's "concession" argument appears in the Minutes of the May 22, 2015 hearing. (Doc # 168 at 5.)

The court also fails to understand Plaintiff's continued objection that the Defendant did not produce those documents which would reflect he was "properly trained." The Defendant has made available to Plaintiff for inspection his (Jaeger's) training documents, and as such, any further production by Defendant Jaeger in this matter relative to his *"training documents"* (emphasis added) would be governed by those already made available for inspection. Therefore, the court finds that Defendant has in fact answered this request "in writing" and any transcript relative to this discovery is unnecessary. Accordingly, the court finds RFP No. 4 has been adequately responded to in the supplemental response (Doc. # 178-1 at 2) and therefore no transcript of the hearing is necessary.[2]

B. Requests for Production Nos. 2 and 6 (Defendant Jaeger's status as "Shift Supervisor")

RFPs Nos. 2 and 6 and the Defendant's supplemental responses are as follows:

**REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2**

Plaintiff has been informed by several officers that there should be an institutional shift log which identifies [the] shift supervisor. Plaintiff is requesting the log information of September 30, 2011, at 15:41 hours (3:14) at SDCC which identifies [the] shift supervisor.

**SUPPLEMENTAL RESPONSE PURSUANT TO COURT ORDER #168 TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 2**

Defendant hereby produces the following Shift Log from Southern Desert Correctional Center for the date of September 30, 2011, bearing the bates identification range NDOC 0219. The Shift Log does not identify a "shift supervisor."

---

[2] The court acknowledges that the court's minutes of the May 22, 2015 hearing stated that with respect to RFP No. 4, "Defendant failed to file the documents with the court as instructed in court order Doc. # 132." (Doc. # 168 at 5.) The Minutes misstated the language or intent of the underlying order (Doc. # 132). What the court ordered was that if the Defendant persisted in asserting the training documents, if any, as to the procedures for processing grievances is privileged, then Defendant would have to provide a privilege log as to the processing of grievances. (Doc # 132 at 8.) The court did not require, despite what was stated in Doc. # 168, that the training documents themselves would have to be submitted to the court. (*Id.*)

It would also serve no purpose to review the training materials when there is no dispositive motion pending for which the Defendant's training file would be relevant.

3

> Rather, the Shift Log identifies several sergeants and lieutenants. Defendant Jaeger was the Segregation Sergeant, meaning he was the supervising sergeant for the segregation unit where Plaintiff was housed on September 30, 2011. Therefore, Defendant Jaeger was the shift supervisor for the segregation unit.
>
> **REQUEST FOR PRODUCTION OF DOCUMENTS NO. 6**
>
> In regards to Plaintiff's Interrogatory no. 15, you insinuated that being that you were ". . . [a] supervisor assigned to the Southern Desert Correctional Center." you had the authority to answer Plaintiff's emergency grievance. Yet you failed to produce the document that verified such authority. Plaintiff is requesting that document.
>
> **SUPPLEMENTAL RESPONSE PURSUANT TO COURT ORDER #168 TO REQUEST FOR PRODUCTION OF DOCUMENTS NO. 6**
>
> Defendant hereby produces the following Shift Log from Southern Desert Correctional Center for the date of September 30, 2011, bearing the bates identification range NDOC 0219. The Shift Log does not identify a "shift supervisor." Rather, the Shift Log identifies several sergeants and lieutenants who were in charge of various areas of the institution. Defendant Jaeger was the Segregation Sergeant, meaning he was the supervising sergeant for the segregation unit where Plaintiff was housed on September 30, 2011. Therefore, Defendant Jaeger was the shift supervisor for the segregation unit and was authorized to answer the emergency grievance. After a reasonable inquiry and search, there does not appear to be a document that labels Defendant Jaeger specifically as "shift supervisor," only as "segregation sergeant." This shift log does not identify any "shift supervisor."

Doc. # 178-1 at 3-7.

The underlying dispute relative to these documents and as outlined in Plaintiff's reply memorandum is that while the log which Defendant has produced (Doc. # 178-1 at 7, NDOC 0219) identifies Defendant Jaeger as "Segregation Sergeant," Plaintiff's contention is that no document reflects Defendant's concomitant status as "Shift Supervisor." (Doc. # 182 at 2-7.) Defendant's response admits that there is no document that labels Defendant Jaeger specifically as "shift supervisor," only as "segregation sergeant." The shift log in fact does not identify Sgt. Jaeger specifically as shift supervisor.

What Defendant offers as an explanation for his authorization to serve as "Shift Supervisor" was that he was the "Segregation Sergeant, meaning he was the supervising sergeant for the segregation unit where Plaintiff was housed on September 30, 2011. Therefore, Defendant was the shift supervisor for the segregation unit and was authorized to answer the emergency grievance." (Doc # 178-1 at 5.)

Despite this explanation, Plaintiff contends that Defendant has failed to produce a document which identifies the Defendant as "shift supervisor" and that "instead Defendant has once again resolved to evasive tactics and is now contending that the Shift Roster doesn't identify a shift supervisor, after

4

1  originally and accurately stating otherwise." (Doc. # 182 at 6.) Plaintiff argues Defendant appears to be
2  engaging in some type of semantical gymnastics to equate his position as "segregation sergeant" for the
3  shift to also be the supervising sergeant for the segregation unit and, hence, was authorized to answer
4  the emergency grievance because he was the "shift supervisor" for the segregation unit. (Doc. # 178-1.)

5        The court is concerned that there is no document which would correlate Defendant Jaeger's
6  ability to serve as "shift supervisor" by reason of his capacity as being "segregation sergeant" for the
7  unit.  The court's concern arises by reason of NDOC Administrative Regulation 740.10(1) which states
8  that an emergency grievance is to be delivered to the *shift supervisor*.  As discussed above, Defendant
9  asserts his authority to act as a "shift supervisor" (and hence be able to respond to an inmate's emergency
10 grievance under AR 740.10) arises from his status as a "segregation sergeant."

11       While there very well may be no NDOC administrative regulation or operational procedure
12 document which cloaks a segregation sergeant as being authorized to act as "supervising sergeant for
13 the segregation unit" and hence the "shift supervisor for the segregation unit," Defendant is directed to
14 **produce** within **ten (10) days** of this order a response to advise the court whether there are any
15 administrative regulations or other NDOC documents which specifically authorized Sergeant Jaeger as
16 a segregation sergeant to act as the shift supervisor and **produce** any documentation or written authority
17 for this characterization, if any.  The court is aware the shift log does not identify any "shift supervisor"
18 and that there may likely be no NDOC document which specifically vests Defendant with this authority.
19 If there are no further relevant documents on these issues, Defendant shall advise the court accordingly.
20 ///
21 ///
22 ///
23 ///
24 ///
25 ///
26 ///
27 ///
28 ///

1  The court will thereafter determine whether any further hearing is necessary relative to the disputes

2  remaining with respect to Requests for Production Nos. 2 and 6 after receipt of Defendant's elaboration.[3]

3  **IT IS SO ORDERED.**

4  DATED: July 23, 2015.

6  _____
   WILLIAM G. COBB
7  UNITED STATES MAGISTRATE JUDGE

---

[3] Although the court is seeking clarification of this issue of supervisory status, whether Sergeant Jaeger was or was not a "shift supervisor" may be academic. In that regard, what the court stated at the outset of the May 22, 2015, hearing bears repeating:

"First, to help guide today's discussions regarding the discovery disputes, the court reviews with the parties District Judge Miranda M. Du's screening order (Doc. # 6), which sets forth the parameters this case is to proceed. Judge Du ordered "all claims are dismissed without prejudice for failure to state a claim upon which relief may be granted except for the claims under the First Amendment and Article1, Section 9, of the Nevada Constitution against the Defendants for alleged retaliation and/or interference with Plaintiff's ability to pursue a disciplinary appeal and grievance" (Doc. # 6). The court also quoted from Judge Du's screening order as follows:

'The First Amendment protects an inmate from retaliation from bringing grievances. The First Amendment, however, does not constitutionalize a state corrections department's grievance procedures. Thus, a Nevada state inmate has no First Amendment claim for an alleged violation of AR 740. It is established law that an inmate does not have a constitutional right to have his grievance either decided or processed in a particular manner.'

Therefore, the court reminds the parties that many of the pending discovery issues in this matter must be decided within the boundaries of what the District Judge Du has allowed to proceed."

Doc. # 168 at 1-2.