1

2

3

4

5

6                              **UNITED STATES DISTRICT COURT**

7                                      **DISTRICT OF NEVADA**

8

9   ANTHONY CROSS,                          )            3:13-cv-00433-MMD-WGC
                                            )
10              Plaintiff,                   )                    **ORDER**
                                            )
11        vs.                                )              **Re:  ECF No. 266**
                                            )
12   RON JAEGER, et al.,                     )
                                            )
13              Defendants.                  )
    _____)

14

15        Before the court is Plaintiff's "Motion to Reopen the Discovery Requests." (ECF No. 266.).[1] As

16   discussed in this order, the court grant's Plaintiff's motion in limited part and denies Plaintiff's request

17   for any other discovery.

18        The Local Rules of the United States District Court require a party seeking to re-open discovery

19   to include  a statement by the movant providing a "specific description of the discovery that remains to

20   be completed." LR 26-4(b). Although Plaintiff's motion does not provide the "specific description" of

21   his proposed discovery, as best as the court can discern, Plaintiff seeks to re-open discovery as to two

22   issues: one relates to Defendant Jaeger's status as a "shift supervisor" or whether Jaeger had the

23   authority to process Plaintiff's emergency grievance, and the other seeks production of SDCC

24   "emergency grievance procedure."[2]

25        The court will address the two components of Plaintiff's request to re-open discovery.

26   **I.     Shift Supervisor Status**

27        Plaintiff's motion for additional discovery regarding Defendant Jaeger's status as a shift

28
    _____

         [1]  Refers to court's Electronic Case Filing number.

         [2]  SDCC is the Southern Desert Correctional Center.

1   supervisor or his authority to process Plaintiff's emergency grievance has been addressed on multiple

2   prior occasions. Most recently, Plaintiff requested clarification of the court's August 4, 2015 ruling

3   denying any further discovery into this issue. In an attempt to resolve any issue as to Plaintiff's repeated

4   requests for additional discovery on the shift supervisor issue, the court first summarized Defendant

5   Jaeger's response on any NDOC or SDCC regulations which cloaked him with putative authority to

6   process Plaintiff's emergency grievance:

> Defendant has admitted he processed Plaintiff's emergency grievance. Although still contending he had the requisite authority as "segregation sergeant and thus a shift supervisor for purposes of AR 740" (Doc. # 197 at 1), he admits there is no specific Nevada Department of Corrections administrative regulation or operating procedure which specifically authorized Defendant Jaeger to respond to the emergency grievance. (*Id.*) To the extent there is any relevance what Defendant Jaeger's grant of authority was from NDOC, that issue is resolved.

(ECF No. 201.)

The court again concluded that discovery had run more than its full course as to this issue stating that:

> Thus, in the court's mind, the issue about what authority Sgt. Jaeger had – or did not have – has been unequivocally identified. The court does not see how the additional discovery Plaintiff proposes will elucidate any additional information relevant to the only viable claims, which are "the claims under the First Amendment and Article 1, Section 9 of the Nevada Constitution against the defendants for alleged retaliation and/or interference with Plaintiff's ability to pursue a disciplinary appeal and grievance." (Doc. # 6 at 3.)

(*Id.*)

19       The record reflects that District Judge Du, on consideration of Plaintiff's objections to this

20   court's multiple "shift supervisor discovery rulings," affirmed this court's analysis:

> Judge Cobb found that Plaintiff and Defendant were engaged in a dispute over semantics irrelevant to Plaintiff's claims. (*Id.*) That is, the question of whether Jaeger should more accurately describe himself as a supervisor of an "entire institution" or a "mere unit supervisor" is irrelevant because Jaeger's responses have already indicated that he was a shift supervisor on the relevant date and had the authority to respond or address Plaintiff's grievance, which is all that is relevant to Plaintiff's claim that Jaeger interfered with his grievance. (*Id.*) Judge Cobb also noted that Jaeger provided NDOC documents defining what a shift supervisor is and explaining his or her responsibilities. Judge Cobb further noted that Jaeger stated that he does not recall Plaintiff filing an emergency grievance on the relevant date. (*Id.*)
>
> Plaintiff's objection argues that Jaeger was not the shift supervisor and it was therefore not his obligation to answer Plaintiff's emergency

1    grievance. (Dkt. no. 137.) The Court agrees with Judge Cobb that
     Plaintiff's request has been sufficiently addressed. It is clear that Plaintiff
2    does not like the response provided by Jaeger but Plaintiff has failed to
     demonstrate that Judge Cobb committed clear error in determining that
3    the response was sufficient.

4    (ECF No. 211 at 2-3.)

5        Plaintiff's motion provides no new rationale or explanation as to why more discovery is required

6    on this issue. Therefore, the court **denies** Plaintiff's motion to the extent Plaintiff seeks to undergo

7    additional discovery on the shift supervisor issue.

8    **II.    SDCC Operational Procedures on Emergency Grievances**

9        Plaintiff fails to identify with specificity exactly what new or additional discovery he wants to

10   undertake with regard to SDCC Operational Procedures regarding emergency grievances. Plaintiff

11   outlines what appear to be informal requests he made in May of this year to the Ely State Prison (ESP)

12   Library[3] for "O.P.s from other facilities" which include a list of  approximately 20 OPs from SDCC.

13   (ECF No. 266 at 8-13.) On June 26, 2015, the ESP Library  declined to provide Mr. Cross most of the

14   operational procedures he requested.  (*Id.*, at 14.)

15       Plaintiff does not outline or summarize what requests he made to Defendant during discovery

16   for such materials, but states that Defendant submitted to him "another so-called version of SDCC-OP

17   #740."  (*id.,* at 2.)  Plaintiff has challenged the Defendant's production of the relevant operational

18   procedures at SDCC for processing emergency grievances. However, Plaintiff has not attached any of

19   the formal discovery requests.

20       As best as the court can ascertain from Defendant's filings, it appears that Defendant first

21   produced documents relating to SDCC procedures for processing emergency grievances in March of this

22   year.  In ECF No. 115-1, Defendant advised the court that in response to Plaintiff's request for

23   production No. 5, Plaintiff was previously provided Nevada Department of Corrections (NDOC)

24   Administrative Regulation (AR) 740, "Inmate Grievance Procedure" effective 9/16/14 NDOC 0113-

25   0126.

26       Defendant's supplemental response further indicated he produced to Plaintiff as NDOC 0168-

27   0209, a copy of SDCC Operational Procedure (OP) 740,which was in effect in September 2011. (ECF

28

---

[3] Plaintiff was then housed at ESP.

1    No. 115-1 at 7, 3/9/15.)  However, Plaintiff replied in ECF No. 126 that Defendant produced an SDCC

2    OP that was not in effect until October 2011; Plaintiff requested the September 2011 version:

3           Request No. 5:  Plaintiff accepts the AR740 version in effect February 12,
            2010 until June of 2014. However, the SDCC O.P. #740 went in effect on
4           October 1, 2011; it was not in effect in September 2011, as Defendant
            alleged.  Plaintiff is requesting the version that was in effect in September,
5           2011.

6    (ECF No. 126 at 3 of 95.)

7           The court cannot ascertain whether Defendant supplemented his response regarding Plaintiff's

8    request (ECF No. 126) for the SDCC OP which was in effect on the date of the incident.[4]

9           The next time the SDCC OP matter came to the attention of the court was when the court recently

10   noted the declaration of Associate Warden Adams in support of Defendant's motion for summary

11   judgment referenced SDCC OP 740.03(7). (ECF No. 231, 231-7, 9/18/15.) Warden Adams stated that

12   "SDCC 740.03(7) outlines how emergency grievances are resolved at SDCC." (*Id.*, at 3.)

13          However, it does not appear that SDCC OP 740 accompanied Warden Adams declaration. Instead,

14   the Defendant later filed an Errata which produced a copy of OP 740. (ECF No. 248.) It was later

15   discovered that the version submitted with the Errata was not in effect on the date in question.  In the

16   meantime, this court granted Plaintiff's motion for reconsideration (ECF No. 242) in part and directed

17   that SDCC OP 740.03(7) be filed under seal and made available to Plaintiff at Ely State Prison. (ECF No.

18   253 at 2.)

19          On October 28, 2015, Defendant filed an actual copy of SDCC OP 740 (not under seal) which was

20   the version in effect on September 30, 2011. (ECF No. 254.) A copy of that document was mailed to

21   Plaintiff as any assertions of confidentiality were waived by Defendant. On November 10, 2015,

22   Defendant's counsel summarized the document production history of SDCC operational procedures

23   regarding emergency grievances as follows:

24          Defendant submitted a supplemental Response to Plaintiff's Request for
            Production of Documents [Set 2] on March 9, 2015. (#115-1). The
25          response to request no. 5 included a copy of Southern Desert Correctional
            Center Operational Procedure 740. (*Id.* at 7). Plaintiff argues that he
26          subsequently raised the issue of the effective date of the OP on March 23,

27   _____

28       [4] Discovery responses are generally not filed with the court, and typically the court would only see any responses
     or supplemental responses in connection with motion practice.  Local Rule 26-7(a). Plaintiff states he has "filed an objection
     to the document" but does not cite to any objection.

4

1   2015. (#259 at 2-3; #126 at 3). However, during a subsequent motion
2   hearing on Plaintiff's motion to compel, Plaintiff did not raise the issue
    and the Court found the supplement to be sufficient. (#168 at 5). Due to
3   the sheer number of filings by Plaintiff, counsel does not recall Plaintiff
    raising the issue with the Court or requesting a new copy until he filed his
4   opposition to Defendant's Motion for Summary Judgment.

5   Defendant did not purposefully withhold OP 740 from Plaintiff as the
    document is not confidential. Furthermore, the two versions of the OP
6   procedure are nearly identical. The OP was submitted by Defendant to
    demonstrate that the correct grievance procedure was followed for
7   processing the emergency grievance. This is not a "new" piece of
    information. Plaintiff was given a copy of this OP early in the litigation.
8   The OP submitted in the errata superseded the 2003 version, which was in
    turn replaced by the October 1, 2011, version.

9   (ECF No. 261 at 1-2.)[5]

10      The court is concerned that although the OP, or OPs, submitted by Warden Adams may not be

11  a "new piece of information," nevertheless it is possible, although not probable in the court's opinion,

12  the recent production of the OP which was in effect on the date of the incident may somehow impact

13  Plaintiff's theory of recovery or the parties' motions for summary judgment (Plaintiff's, ECF No. 222,

14  9/10/15; Defendant's, ECF No 231, 9/18/15).

15      Having reviewed both versions of the SDCC Operational Procedures on emergency grievances,

16  the court discerns little substantive difference between SDCC OP 740 in effect in September 2011 versus

17  that version which followed. The court notes that Plaintiff's motion for summary judgment did not

18  reference any version of SDCC's operational procedure, so its relevance to this litigation may be

19  marginal. Instead, Plaintiff requested the court to order Defendant to produce a copy of Ely State Prison's

20  (ESP) operational procedure on grievances, not SDCC's. The court found ESP's procedures to be

21  irrelevant to the processing of Plaintiff's grievance at SDCC and denied Plaintiff's request. (ECF No.

22  253.)

23      The court is not inclined to re-open discovery altogether with regard to the SDCC OP. However,

24  the court needs additional information. Therefore, by **December 11, 2015**:

25      (1) **Defendant** shall file a notice of the dates when the relevant version of SDCC OP 740 was

26  provided Plaintiff, along with supporting documents pertaining thereto.

27  _____

28      [5] The Errata supersedes the version of OP 740 (effective 10/1/2011) which was originally submitted as Exhibit F
    in support of the Defendants' response to Plaintiff's motion for summary judgment (ECF No. 234-6) and earlier as Exhibit
    F in support of Defendant's motion for summary judgment (ECF No. 231-6).

5

1     (2) **Plaintiff** shall file a notice of relevance of SDCC OP 740, including a statement outlining

2        a) when he received the September 2011 version of SDCC OP 740;

3        b) what substantive distinction exists between the September 2011 an October 2011 versions

4   of SDCC OP 740 and how those distinctions, if any, impact Plaintiff's case; and,

5        c) what specific new discovery Plaintiff proposes should be undertaken with respect to SDCC

6   OP 740.

7        The court will calendar a discovery conference on this case after December 11, 2015.  When

8   evaluating whether any additional discovery is appropriate, this court will again follow District Judge

9   Du's evaluation of the constitutional issues this case presents:

10
          It is established law that an inmate does not have a constitutional right to
11          have his grievances either decided or processed in a particular manner.
          *See, e.g., Seely v. Gibbons*, 2013 WL 6440206 (9th Cir. Dec. 10, 2013);
12          *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003.

13  (ECF No. 6 at 2.)

14  **IT IS SO ORDERED.**

15  DATED:   November 30, 2015.

16                          _William G. Cobb_

17                          WILLIAM G. COBB
                            UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23

24

25

26

27

28