1

2

3

4

5

6                   **UNITED STATES DISTRICT COURT**

7                        **DISTRICT OF NEVADA**

8

9   ANTHONY CROSS,                    )          3:13-cv-00433-MMD-WGC
                                       )
10              Plaintiff,             )
                                       )          **ORDER**
11        vs.                          )
                                       )          **Re:  ECF No. 284**
12  RON JAEGER,                        )
                                       )
13              Defendant.             )
    _____)

14

15        Before the court is Plaintiff's Motion for Entry of Sanctions Due to the Spoliation of Evidence

16  (Second). (Electronic Case Filing (ECF) No. 284.) Defendant has responded (ECF No. 287) and Plaintiff

17  has replied (ECF No. 291). For the reasons stated in this order, Plaintiff's motion is denied.

18        Plaintiff Anthony Cross is an inmate in the custody of the Nevada Department of Corrections

19  (NDOC) and has been at all relevant times. The subject of his lawsuit arose when he was housed at the

20  Southern Desert Correctional Center (SDCC). (ECF No. 4 at 2.)

21        Plaintiff seeks sanctions against Defendant Jaeger by reason of the inability of NDOC to produce

22  an organizational chart Plaintiff informally requested from NDOC outside of this litigation regarding

23  the "'functions, spans of control, lines of authority and orderly channels of communication' for the

24  Southern Desert Correctional Center on September 30, 2011." (ECF No. 284 at 5; "Exhibit A".)

25  Plaintiff states he was advised by NDOC "that the documents are no longer available. See Exhibit A."

26  (ECF 284 at 2; emphasis in the original.)  Plaintiff contends the "spoliation of this evidence allows the

27  Defendant to continue making false claims of being the Shift Supervisor and authorized to answer

28  Plaintiff's emergency Grievance." (*Id.* at 3.)

1    Defendant responds that the information Plaintiff sought from the NDOC is not relevant to the

2    claims proceeding in Plaintiff's action. (ECF No.387 at 2.) Regardless of its relevancy, Defendant also

3    asserts he "never had custody or control over any information made in the public records request by

4    Plaintiff and was not responsible for its absence." (*Id.*) Plaintiff's reply argues that because Defendant

5    Jaeger and the NDOC Public Information Officer "are both employed by the same agency (NDOC)," the

6    Defendant should be sanctioned for the unavailability of the chart. (ECF No. 291 at 2.)

7    ### I. OVERVIEW OF PLAINTIFF'S CIVIL RIGHTS ALLEGATIONS

8    In view of Plaintiff's apparent misunderstanding of what factual and legal issues his case presents

9    – or more appropriately, what his case does <u>not</u> present – the court will outline in greater detail the

10    background of this action.

11    District Judge Miranda M. Du's initial screening order characterized Plaintiff's averments against

12    Defendant Jaeger, as follows:

13

14    In Counts I and I-A, plaintiff alleges that defendant Jaeger violated the following provisions on September 30, 2011, when he did not give Cross the form required with a disciplinary appeal and thereafter intercepted and denied his emergency grievance.

15

16    In Counts V and V-A, plaintiff alleges that defendant Jaeger violated the foregoing provisions on September 30, 2011, when he intercepted plaintiff's grievance and failed to forward a copy of the grievance to the grievance coordinator for entry into the

17    grievance tracking program.

18    (ECF No. 4 at 3-4.)

19    Judge Du concluded that "Counts I, I-A, V and V-A state claims upon which relief may be

20    granted under the First Amendment and Article 1, Sections 9 of the Nevada Constitution[1] <u>against</u>

21    <u>defendant Jaeger based upon his alleged interference on September 30, 2011, with plaintiff's ability to</u>

22    <u>pursue his disciplinary appeal and emergency grievance.</u>" (*Id*. at 4; emphasis added.)

23    In addition to identifying those claims which the court would allow to proceed, Judge Du

24    explained which claims would not:

25    The nonconclusory allegations of actual fact in the remaining counts do not state a claim upon which relief may be granted under the First Amendment or the state constitution

26

27    [1] "*See, e.g., University and Community College System of Nevada v. Nevadans*, 120 Nev. 712, 722, 100 P.2d 179, 187 (2004) (federal and state constitutional protections for expression, including petitioning for redress of grievances, are

28    identical)." (Quoting from Screening Order, ECF No. 4 at 4.)

1   against defendant Burson based upon her refusal to accept the first and second level
    appeals or otherwise on October 6, 12, 24 and 27, 2011. A mere failure to rule in an
2   inmate's favor on a disciplinary appeal and /or grievance and to agree with his position
    therein does not constitute retaliation against the plaintiff for exercise of his First
3   Amendment rights. Otherwise, every rejection of a disciplinary appeal and/or grievance
    would constitute First Amendment retaliation. Under well-established law, an inmate
4   does not have a constitutional right to have his grievances either decided <u>or processed in</u>
    <u>a particular manner</u>. *See, e.g., Seely v. Gibbons*, 2013 WL 6440206 (9th Cir. Dec. 10,
5   2013); *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). <u>While the allegations of</u>
    <u>Counts I and V tend to reflect affirmative interference by defendant Jaeger with</u>
6   <u>plaintiff's ability to pursue a disciplinary appeal and grievance</u>, the allegations of the
    remaining counts reflect only that defendant Burson did not accept plaintiff's assertions
7   as to what Jaeger had done in this regard.

8   (*Id.*, at 4; emphasis added.)

9       Judge Du afforded Plaintiff thirty days to file an amended complaint to correct other conclusory

10  and non-viable averments in his complaint. (*Id.* at 5-6.)

11      Plaintiff timely submitted an amended complaint (ECF No. 5) which Judge Du allowed to

12  proceed but again only in certain part as against Defendant Jaeger:

13      As held in the prior screening order, Counts I, I-A, V and V-A state claims upon which
        relief may be granted under the Amendment and the parallel provision in Article 1,
14      Section 9 of the Nevada Constitution against defendant Ron Jaeger <u>based upon his</u>
        <u>alleged interference on September 30, 2011, with plaintiff's ability to pursue his</u>
15      <u>disciplinary appeal and emergency grievance</u>. * * *

16  (ECF No. 6 at 1; emphasis added.)

17      Judge Du again did <u>not</u> allow Plaintiff's allegations that Defendants' failure to comply with either

18  state law or NDOC grievance procedures to proceed as against Sgt. Jaeger (or against former Associate

19  Warden Cheryl Burson, who was later dismissed as a defendant under Fed. R. Civ. P. 4(m) for failing

20  to effect service (ECF No. 146)):

21      In this regard, plaintiff begins Count I of the amended complaint with a legal argument
        that he incorporates in all remaining counts. Under plaintiff's argument, (a) the Nevada
22      Legislature enacted provisions authorizing the executive branch to establish rules
        governing prisons and these rules are "substantive" with the force of law; (b) a prisoner's
23      efforts to utilize AR 740, which sets forth grievance procedures, is protected by the First
        Amendment; and (c) the First Amendment applies to the States through the Fourteenth
24      Amendment.

25      The First Amendment <u>protects an inmate from retaliation for bringing grievances</u>. The
        First Amendment, however, <u>does not constitutionalize a state corrections department's</u>
26      <u>grievance procedures</u>. Thus, a Nevada state inmate has no First Amendment claim for an
        alleged violation of AR 740. It is established law that an inmate does not have a
27      constitutional right to have his grievances either decided or processed in a particular
        manner. *See, e.g., Seely v. Gibbons*, 2013 WL 6440206 (9th Cir. Dec. 10, 2013);
28      *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003).

1   (ECF No. 6 at 2; emphasis added.)

2          As particularly relevant to Plaintiff's current allegations in his spoliation motion that an NDOC

3   organizational chart would establish his cause of action, Judge Du's earlier order further stated:

4          Moreover, as held in the prior order, the state statutes relied upon do not purport on their
           face to establish a private right of action, and it does not appear that either state
5          corrections department regulations or manuals create a private right of action. Merely
           because a state legislature authorizes an executive department to adopt regulations does
6          not establish that a private right of action is created thereby. Labeling the rules as
           "substantive" has no talismanic significance in this regard. There is no indication
7          whatsoever in the state statutes cited by plaintiff that the Nevada Legislature intended
           thereby to provide inmates with an ability to bring a civil action under state law for
8          alleged failures to follow the particular procedures of the prison grievance system under
           AR 740.
9
           Plaintiff otherwise has not presented actual factual allegations that would tend to
10         establish the deprivation of a protected liberty interest as a threshold requirement for a
           viable procedural due process claim under the Fourteenth Amendment. See dkt no. 4, at
11         4-5.

12   (ECF No. 6 at 3; emphasis added.)

13          Plaintiff's spoliation motion, once again, misstates the issue presented by his civil rights action.

14   Plaintiff's motion asserts that "the very core" of his action is "the identity of the shift supervisor, and

15   his or her assigned post, authority and duties." (ECF No. 284 at 2.) As Plaintiff has been repeatedly

16   advised, however, the issue is not whether Sgt. Jaeger had the actual or apparent authority from the

17   Nevada Department of Corrections (NDOC) to process Plaintiff's emergency grievance.  Instead, the

18   issue is whether Defendant Jaeger interfered with Plaintiff's ability to pursue his disciplinary appeal and

19   emergency grievance. (ECF No. 6 at 1; ECF no. 193; ECF No. 255 at 2.)

20                          **II.  BACKGROUND OF LITIGATION: DISCOVERY**

21          Plaintiff's motion for sanctions is an iteration of his numerous discovery motions, all of which

22   revolved around Plaintiff's misinterpretation of his cause of action. Because the motion for sanctions

23   is predicated upon similar misinterpretations of what facts or issues are attendant to Plaintiff's litigation,

24   in addition to discussing in detail above what constitutional claims were allowed to proceed,  the court

25   will review the discovery orders which addressed similar contentions by Plaintiff.

26          Plaintiff first sought documentation pertaining to Sgt. Jaeger's status under NDOC authority or

27   procedures on February 17, 2015, in his motion to compel production of documents (second set) from

28   Defendant Jaeger. (ECF No. 96.)  After briefing, the court held a hearing on May 22, 2015, and ordered

1  defendant Jaeger to further state whether there were any documents available which identified him as

2  the shift supervisor. (ECF No. 168.) Defendant responded in his Second Supplemental Discovery

3  Responses (ECF No. 178-1) that no NDOC documents identify him as the shift supervisor; instead

4  Defendant produced a Shift Log. (*Id.* at 7.) Defendant stated that "[t]he shift log identifies several

5  sergeants and lieutenants who were in charge of various areas of the institution. Defendant Jaeger was

6  the segregation sergeant, meaning he was the supervising sergeant for the segregation unit where

7  Plaintiff was housed on September 30, 2011." (*Id.* at 4.)

8       A subsequent order of the court (ECF No. 192, 7/23/15) addressed a Notice of Compliance (ECF

9  No. 178) and other briefing which was submitted in accordance with an earlier order (ECF No. 168).

10  Defendant had been directed to further advise the court whether there are any administrative regulations

11  which specifically authorized Jaeger – as a *segregation sergeant* – to act as the *shift supervisor* and to

12  produce any documentation or written authority for this characterization. Defendant filed a Notice of

13  Compliance (ECF No. 197) on August 3, 2015, which admitted no NDOC Administrative Regulation

14  (AR) or Operating Procedure (OP) could be located which specifically authorized Jaeger to respond to

15  the emergency grievance. Nevertheless, Defendant contended that "he was the segregation sergeant and

16  thus a shift supervisor for purposes of AR 740.  However, no document could be located which

17  specifically details this designation." (ECF No. 197 at 1.)

18       On the same date, Plaintiff Cross filed a motion for leave to serve a third set of requests for

19  documents and information where Plaintiff sought to pursue additional discovery on the shift supervisor

20  matter. (ECF NO. 194.) The court in its order of August 4, 2015, denied Plaintiff's motion stating that

21  Defendant previously admitted in ECF No. 197 there was no NDOC AR or OP which specifically

22  authorized him to respond to the emergency grievance. (ECF No. 199.) The court concluded that "to the

23  extent there is any relevance what [Jaeger's] grant of authority was from NDOC, that issue is resolved."

24  (*Id*.; emphasis added.) [2]

25       On August 6, 2015, Cross filed another motion requesting leave to serve a supplement to the

26  third set of requests for documents and information (RFPs) (which the court had just denied in ECF No.

27

28      [2] Plaintiff's Cross's objection to this court's order was overruled and denied by Judge Du. (ECF No. 255.)

199) pertaining to Defendants's alleged "supervisory training" which identifies the duties of the shift supervisor (ECF No. 200). The court denied this motion on August 7, 2015, because the issue of Jaeger's authority to act as shift supervisor had been addressed and was again deemed not relevant to Plaintiff's claims. (ECF No. 201).

On August 17, 2015, Cross filed ECF No. 205, a motion for reconsideration of the court's order (ECF No. 199), which had denied Plaintiff motion for additional discovery (ECF No. 194). The court on August 18, 2015, denied plaintiff's motion for reconsideration as moot (ECF No. 210). Also on August 17, 2015, Cross filed a motion to allow service of subpoenas at defendant's expense (ECF No. 203), stating that "the defendant is concealing further proof that the Defendant 'was not' the shift supervisor, nor authorized to answer Plaintiff's emergency grievance." Because Plaintiff did not state what the subpoenas were for, to whom the would be directed and what he expected to obtain, the court denied this motion on August 25, 2015. (ECF No. 212.)

On September 3, 2015, Plaintiff filed a motion for issuance of subpoenas duces tecum. This motion was accompanied by 5 proposed subpoenas (but without tender of any witness fees). (ECF No. 216). Except for the named "deponent," the subpoenas all sought the same information, i.e., Post Orders, Operational Procedures, Administrative Regulations, Training Curriculum and Methods of Training, etc., seeking to elicit the identity of whom and what is the Shift Supervisor, Shift Lieutenant, Shift Sergeant and Administrative Segregation Unit Sergeant and his or her duties, responsibilities, training, procedures; the identity by assigned post on the shift roster who was authorized to answer an emergency grievance, how the shift supervisor is assigned and/or appointed; identity of the Subordinate Sergeant and his/her duties and responsibilities, the amount of training; define the chain of command at SDCC, and so forth. The court denied this motion on September 4, 2015, stating: "Plaintiff's letter and the proposed subpoenas are merely a disguised attempt by Plaintiff to circumvent this court's multiple prior orders that discovery has been completed in this matter and the court will not again extend the discovery deadline." (ECF No. 220).

On November 23, 2015, Plaintiff again sought to reopen the discovery requests. (ECF No. 266.) The court denied this motion to the extent Plaintiff sought to undertake additional discovery on the shift

1   supervisor issue.[3] However, the court stated it needed additional information from Defendant about

2   SDCC Operational Procedure 740 (there appeared to be two different albeit similar editions of OP 740

3   and the court needed clarification of which version was effective at the time of Plaintiff's grievance).

4   Defendant was ordered to file a notice of the dates when the relevant version of SDCC OP 740 was

5   provided Plaintiff. Plaintiff was also directed to file a notice of relevance of OP 740 as to either version

6   of OP 740, and the parties were advised the court would thereafter conduct a discovery status conference

7   on December 12, 2015 to discuss OP 740. (ECF No. 269.)

8          The defendant filed his Notice of Compliance with Order No. 266 on December 10, 2015. (ECF

9   No. 271.) On December 18, 2015, Plaintiff filed his Notice of Relevance, stating he found no significant

10  distinctions between the two SDC OP 740s the defendant sent him. (ECF No. 272 at 3.)  That same day,

11  Plaintiff also filed an objection  (ECF No. 273) to the court's order (ECF No. 269) wherein he attempted

12  to reargue the shift supervisor issue which the court had disposed of on multiple prior occasions. The

13  court denied Plaintiff's motion (ECF No. 266) which sought to reopen the discovery requests. (ECF No.

14  274, as corrected in No. 275.)

15         On February 1, 2016, Plaintiff filed his motion to stay ruling on the dispositive pleadings/ reopen

16  discovery (as to the shift supervisor issue). (ECF No. 279). This motion, insofar as it sought to reopen

17  discovery, was denied on February 3, 2016. The order also noted that the dispositive motions filed by

18  both parties had been fully briefed, and that the component of Plaintiff's motion which sought to stay

19  a ruling on the dispositive motions was denied as moot. (ECF No. 281.)[4]

20

21         [3] Earlier On March 10, 2015, this court granted Plaintiff's motion (ECF No. 45) to reschedule certain deadlines and
22  established May 15, 2015, as the new discovery deadline. (ECF No. 116.) As reflected in ECF No. 220 – and numerous other
    orders – this court declined to allow discovery to be re-opened on the shift supervisor issue.

23         [4] This court's order (ECF No. 281) on Plaintiff's motion also contains an overview of Plaintiff's repeated attempts to
    conduct further discovery on the shift supervisor issue. In concluding there was no reason to allow additional discovery,
24  this court cited Judge Du's order affirming this court's rulings on this topic:

25         ***Judge Cobb found that Plaintiff and Defendant were engaged in a dispute over semantics irrelevant to
           Plaintiff's claims. (Id.) That is the question of whether Jaeger should more accurately describe himself as
26         a supervisor of an "entire institution" or a "mere unit supervisor" is irrelevant because Jaeger's responses
           have already indicated that he was a shift supervisor on the relevant date and had the authority to respond
27         or address Plaintiff's grievance, which is all that is relevant to Plaintiff's claim that Jaeger interfered with
           his grievance. (Id.) Judge Cobb also noted that Jaeger provided NDOC documents defining what a shift
28         supervisor is and explaining his or her responsibilities. Judge Cobb further noted that Jaeger stated that he

### III. APPLICABLE LAW: SPOLIATION OF EVIDENCE

Plaintiff previously asserted a claim of spoliation in a motion for sanctions (ECF No. 162), which the court denied in ECF No. 181.[5]  This court noted that the issue of sanctions for spoliation of evidence by reason of a party's failure to preserve relevant evidence was cogently addressed by Magistrate Judge George W. Foley in *Anderson v. Wal-Mart Stores, Inc.*, No. 2:10-cv-02235-GMN-GWF, 2012 WL 300878 (Feb. 1, 2012). Rather than re-stating the law of spoliation, the court quoted from Judge Foley's order then, and will do so again, as follows:

> [T]he court has the inherent authority to impose sanctions based on a party's failure to preserve relevant evidence. Sanctions may be imposed if the party was on notice that the evidence was potentially relevant to pending or reasonably foreseeable litigation and failed to take reasonable steps to preserve it. *United States v. $40,955.00 In U.S. Currency,* 554 F.3d 752, 758 (9th Cir.2009); *Leon v. IDX Sys. Corp.,* 464 F.3d 951, 958 (9th Cir.2006); and *United States v. Kitsap Physicians Serv.,* 314 F.3d 995, 1001 (9th Cir.1992). *See also Anderson v. Wal-Mart Stores, Inc.*, 2011 WL 4621286, at *3-*4 (D.Nev. 2011). The forms of sanction may include (1) an instruction to the jury that it may draw an inference adverse to the party or witness responsible for destroying the evidence, (2) an order excluding witness testimony proffered by the party responsible for destroying the evidence, or (3) a dispositive order dismissing the complaint or entering a default judgment. *In re Napster,* 462 F.Supp.2d 1060, 1066 (N.D.Cal.2006). *See also Powell v. Texvans, Inc.,* 2011 WL 1099120, *4 (D.Nev.2011) and *Morford v. Wal-Mart Stores, Inc.,* 2011 WL 635220, *3 (D.Nev.2011). While a finding of bad fath is not required for the imposition of sanctions, "a party's motive or degree of fault in destroying evidence is relevant to what sanction, if any, is imposed." *In re Napster,* 464 F.Supp.2d at 1066–67, citing *Baliotis v. McNeil,* 870 F.Supp. 1285, 1291 (M.D.Pa.1994). Courts should choose "the least onerous sanction corresponding to the willfulness of the destructive act and the prejudice suffered by the victim." *Schmid v. Milwaukee Electric Tool Corp.,* 13 F.3d 76, 79 (3rd Cir.1994); *Dillon v. Nissan Motor Co., Ltd.,* 986 F.2d 263 (8th Cir.1993). *See also Leon v. IDX Systems Corp.,* 464 F.3d 951, 959 (9th Cir.2006).

*(Id.,* at *2.)

---

does not recall Plaintiff filing an emergency grievance on the relevant date. (*Id.*)

Plaintiff's objection argues that Jaeger was not the shift supervisor and it was therefore not his obligation to answer Plaintiff's emergency grievance. (Dkt. no. 137.) The Court agrees with Judge Cobb that Plaintiff's request has been sufficiently addressed. It is clear that Plaintiff does not like the response provided by Jaeger but Plaintiff has failed to demonstrate that Judge Cobb committed clear error in determining that the response was sufficient. Jaeger has addressed the issue as it pertains to Plaintiff's claims. The purpose of discovery is to allow parties to obtain discoverable information, not to argue with the opposing party's discovery responses. Plaintiff can attempt to demonstrate at trial that Jaeger is not being truthful if he so chooses.

(ECF No. 211 at 5-6; Order Denying Plaintiff's Objections (ECF Nos. 55, 119, 136, 137, 169, 170, 171, 173, 174 and 187) (emphasis added).)

[5] Judge Du affirmed this Court's ruling in ECF No. 211 at 9, 10.)

1    The burden is on the movant of establishing the elements of a spoliation claim. *United States v.*

2    *Kitsap Physicians Serv.*, 314 F.3d at 1001.

3                                      **IV. DISCUSSION**

4    **A.   Alleged Spoliation of Evidence by Defendant**

5         Plaintiff's motion for sanctions (ECF No. 284) does not identify any document that Defendant

6    Jaeger spoliated.  The NDOC organizational chart which Plaintiff seeks does not exist, and if it did, it

7    was not in the possession of the Defendant.  As Defendant stated in his memorandum:

8         In this case, Defendant Jaeger has repeatedly responded to discovery that there is no
          document which specifically lists him as a shift supervisor and that there was no
9         document identifying him as such. The organizational chart Plaintiff seeks, which is
          available on the NDOC website, likewise does not list specific individuals, but instead
10        is a generalized chart. Defendant Jaeger never had custody or control over any
          information made in the public records request by Plaintiff and was not responsible for
11        its absence.

12   (ECF No. 287 at 2.)

13        Plaintiff states the Administrative Regulation (AR) which he refers to in his motion, AR 111,

14   imposes upon "Wardens, Division Heads and Administrators" to develop "organizational charts."

15   Additionally, as Plaintiff also recognized, the organizational charts are to be in a "format approved by

16   the Director." (ECF No. 284 at 1-2.) Although not cited by Plaintiff, AR 111.01(4) further states the

17   organizational charts are to be approved by the Director. There is nothing to suggest in AR 111 that shift

18   sergeants or lieutenants or shift supervisors are involved in either the creation of or the maintaining of

19   such organizational charts. While as Plaintiff states, AR 111.01(7) provides the organizational charts

20   were to have been "posted where staff have access" to them (ECF No. 291 at 2), it does not follow

21   Defendant had possession of such a chart, or if he did, that he disposed of it.  Quoted above was a

22   statement of Defendant he did <u>not</u> have "custody or control" over the information. (ECF No. 287 at 2.)

23        Plaintiff's motion refers to the NDOC's response to his (Cross's) letter requesting production

24   of "charts concerning the 'functions, spans of control, lines of authority and orderly channels of

25   communication' for the Southern Desert Correctional Center.'" (ECF No. 284 at 5, Exhibit A.) The

26   NDOC response to Plaintiff's informal request, as Plaintiff paraphrases it, was that "the documents are

27   no longer available." (*Id.* at 2, 5.) That such documents are no longer maintained by NDOC appears to

28   be the basis upon which Plaintiff seeks to sanction Defendant Jaeger. Regardless of the motivation of

1   NDOC and/or the SDCC Offender Management Unit in disposing of these charts, any such ulterior

2   motives in doing so cannot be attributed to this Defendant. *United States v. Kitsap Physician Serv.*, 314

3   F.3d at 1001.[6]

4        Neither NDOC nor SDCC is a party and the court cannot sanction a non-party. Nor does Plaintiff

5   even request the sanctioning against a non-party; the sanctions Plaintiff seeks for the disposal of the

6   organizational charts are against Defendant Jaeger.

7   **B.  Prejudice by Reason of Alleged Spoliation**

8        Plaintiff states the "Organizational Charts should answer the very core of Plaintiff's claims, i.e.,

9   "the identity of the Shift Supervisor, and his, or her assigned post authority and/or duties." (ECF No. 284

10   at 2.)  Plaintiff is mistaken; this is *not* the very core of Plaintiff's claims.  The court has repeatedly stated

11   that "[t]he issue before the court is whether Defendant Jaeger interfered with Plaintiff's ability to pursue

12   a disciplinary appeal and grievance." See, e.g., ECF No. 183, citing the aforementioned Screening Order,

13   ECF No. 6 at 1. As extensively outlined above, Judge Du's two screening orders made clear the only

14   constitutional issues allowed to proceed as against Defendant Jaeger are whether he interfered with

15   Plaintiff's ability to pursue a disciplinary appeal and grievance.  (ECF No. 4 at 4; ECF No. 6 at 1.)

16        In a more recent ruling on Plaintiff's objections to this court's order on discovery, Judge Du

17   again described Plaintiff's claims which survived screening as follows:

18       Thus, the claims remaining are Counts I, I-A, V and V-A against Jaeger. In these Counts,
Plaintiff alleges that Jaeger violated the First Amendment and Article 1, Section 9 of the

19   Nevada Constitution on September 30, 2011, when he did not give Plaintiff the form
required with a disciplinary appeal and thereafter intercepted and denied his emergency

20   grievance. (Dkt. no. 4.)

21   (ECF No. 255 at 2.)

22        Thus, the "core" of Plaintiff's case is <u>not</u> whether Defendant Jaeger was shift supervisor or did

23   or did not have authority to process Plaintiff's grievance.  The "core" is whether Jaeger retaliated against

24   Plaintiff by interfering with the processing of Plaintiff's grievance. In addition to failing to demonstrate

25

26   [6] "Showing evidence of spoliation of the claim documents <u>by the defendants</u> would allow [Plaintiff] to argue to the
jury adverse inferences of fraud that might be sufficient to defeat summary judgment" citing  *Aikona v. United States*, 938

27   F.2d 158, 161 (9th Cir. 1991). Because there was no credible evidence the defendant was involved in spoliation, the *Kitsap*
court concluded "there is nothing to warrant a finding of spoliation." 938 F.2d at 1001, 1002; emphasis added. Just because

28   Defendant Jaeger and the NDOC Public Information Officer are both employed by NDOC does not support a conclusion
Defendant Jaeger would be culpable for disposition of the charts.

1    any personal involvement by Defendant Jaeger in the disposal of this "evidence," Plaintiff has not

2    satisfied his burden of demonstrating prejudice by reason of NDOC not preserving any organizational

3    charts because those charts are not determinative of Plaintiff's claim.  *Ryan v. Editions Ltd., West*, 786

4    F.2d 754, 766 (9th Cir 2015).

5                                           **V.  CONCLUSION**

6            Plaintiff's motion for entry of sanctions for spoliation of evidence (ECF No. 284 is **DENIED.**

7    **IT IS SO ORDERED.**

8    DATED:  March 30, 2016.

9                                                            WILLIAM G. COBB
                                                            UNITED STATES MAGISTRATE JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28