1

2

3

4

UNITED STATES DISTRICT COURT

5

DISTRICT OF NEVADA

6 | ANTHONY CROSS,                                    Case No. 3:13-cv-00433-MMD-WGC

7 |                                    Plaintiff,    **REPORT & RECOMMENDATION OF**
                                                     **U.S. MAGISTRATE JUDGE**
8 |       v.

9 | RON JAEGER, et. al.,

10 |                                    Defendants.

11

12          This Report and Recommendation is made to the Honorable Miranda M. Du, United

13   States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to

14   28 U.S.C. § 636(b)(1)(B) and the Local Rules of Practice, LR 1B 1-4. Before the court is

15   Plaintiff's Motion for Summary Judgment. (Electronic Case Filing (ECF) Nos. 222[1], 229[2], 244[3].)

16   Defendant Jaeger filed a response. (ECF No. 234.) Plaintiff filed a reply. (ECF No. 241.) Jaeger

17   then filed an errata. (ECF No. 249), Plaintiff filed a response to the errata (ECF No. 259), to

18   which Jaeger filed a reply (ECF No. 261).

19          Also before the court is Jaeger's Motion for Summary Judgment. (ECF No. 231.)

20   Plaintiff filed a response. (ECF No. 240.) Jaeger filed an errata (ECF No. 248), to which Plaintiff

21   filed a response (ECF No. 259). Jaeger filed a reply brief in support of his motion for summary

22   judgment (ECF No. 251), as well as a reply to Plaintiff's opposition to the errata (ECF No. 261).

23          Plaintiff has also moved to strike several of the exhibits Jaeger filed in support of his

24   response to Plaintiff's motion and Jaeger's own motion. (ECF Nos. 237, 238.) He has also filed a

25   _____

26        [1] The court notes that Plaintiff's motion includes a statement made under penalty of perjury that the
     information contained in the motion is true and correct. (ECF No. 222 at 24.)

27        [2] This is Plaintiff's Exhibit L, which was manually filed by Jaeger per ECF No. 225.

28        [3] This is Plaintiff's Exhibit Q, which was filed by Jaeger per ECF No. 242.

1    motion for leave to file a supplemental exhibit in support of his motion. (ECF No. 297.) The

2    undersigned has addressed those motions in a separate order.

3          After a thorough review, the court recommends that Plaintiff's motion be denied, and that

4    Jaeger's motion be granted in part and denied in part.

5                                    **I. BACKGROUND**

6          Plaintiff is an inmate in the custody of the Nevada Department of Corrections (NDOC),

7    proceeding pro se with this action pursuant to 42 U.S.C. § 1983 and the Nevada Constitution.

8    (Screening Order, ECF No. 6; Am. Compl., ECF No. 7.) The events giving rise to this action

9    took place while Plaintiff was housed at Southern Desert Correctional Center (SDCC), though he

10   is now housed at Ely State Prison (ESP). (ECF No. 7.) The only defendant is Ron Jaeger, as

11   defendant Cheryl Burson and the claims against her were dismissed without prejudice pursuant

12   to Federal Rule of Civil Procedure 4(m). (*See* ECF No. 146.)

13         Plaintiff alleges that on September 30, 2011, Jaeger conducted a disciplinary hearing

14   during which Plaintiff was found guilty. (ECF No. 7 at 3, 4.) Jaeger and Plaintiff became

15   involved in a heated discussion off the record, and Jaeger became upset and stated: "You might

16   as well be quiet and just do an appeal, because you're not going to win an argument against me."

17   (*Id*. at 4.) Plaintiff then remained silent, and as a result Jaeger ordered him removed from the

18   hearing. (*Id*.) Plaintiff claims that Jaeger refused to give him a copy of Disciplinary Form III,

19   which Plaintiff needed to perfect his disciplinary appeal. (*Id*.)

20         Plaintiff avers that when he returned to his cell he became upset, and experienced

21   dizziness and headaches, and then submitted an emergency grievance addressing the above facts,

22   in hopes of obtaining the Disciplinary Form III. (*Id*. at 4-5, 14.) He alleges that Jaeger, without

23   authority, intercepted and maliciously denied the grievance. (*Id*. at 5, 14.) Plaintiff further asserts

24   that  Jaeger refused to forward the necessary copy to the grievance coordinator (Burson), for

25   entry into NDOC's processing and tracking system (*Id*. at 14.) He contends that Jaeger's actions

26   served no purpose other than to retaliate against him for exercising his First Amendment right

27   not to speak, to petition redress of grievances, access the courts and exhaust his administrative

28   remedies. (*Id*. at 5, 14.)

On screening, the court concluded that Counts I, I-A, V and V-A state claims for relief under the First Amendment and the parallel provision in Article 1, Section 9 of the Nevada Constitution, based on Jaeger's alleged interference on September 30, 2011, with Plaintiff's ability to pursue his disciplinary appeal and emergency grievance.

Both parties now move for summary judgment. (ECF Nos. 222, 231.)

## II. LEGAL STANDARD

"The purpose of summary judgment is to avoid unnecessary trials when there is no dispute as to the facts before the court." *Northwest Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994) (citation omitted). In considering a motion for summary judgment, all reasonable inferences are drawn in favor of the non-moving party. *In re Slatkin*, 525 F.3d 805, 810 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)). "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). On the other hand, where reasonable minds could differ on the material facts at issue, summary judgment is not appropriate. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1)(A), (B).

If a party relies on an affidavit or declaration to support or oppose a motion, it "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).

In evaluating whether or not summary judgment is appropriate, three steps are necessary: (1) determining whether a fact is material; (2) determining whether there is a genuine dispute as to a material fact; and (3) considering the evidence in light of the appropriate standard of proof.

- 3 -

1   *See Anderson*, 477 U.S. at 248-250. As to materiality, only disputes over facts that might affect

2   the outcome of the suit under the governing law will properly preclude the entry of summary

3   judgment; factual disputes which are irrelevant or unnecessary will not be considered. *Id*. at 248.

4         In deciding a motion for summary judgment, the court applies a burden-shifting analysis.

5   "When the party moving for summary judgment would bear the burden of proof at trial, 'it must

6   come forward with evidence which would entitle it to a directed verdict if the evidence went

7   uncontroverted at trial.'...In such a case, the moving party has the initial burden of establishing

8   the absence of a genuine [dispute] of fact on each issue material to its case." *C.A.R. Transp.*

9   *Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (internal citations

10  omitted). In contrast, when the nonmoving party bears the burden of proving the claim or

11  defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate

12  an essential element of the nonmoving party's case; or (2) by demonstrating the nonmoving party

13  failed to make a showing sufficient to establish an element essential to that party's case on which

14  that party will bear the burden of proof at trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-

15  25 (1986).

16        If the moving party satisfies its initial burden, the burden shifts to the opposing party to

17  establish that a genuine dispute exists as to a material fact. *See Matsushita Elec. Indus. Co. v.*

18  *Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a genuine dispute of

19  material fact, the opposing party need not establish a genuine dispute of material fact

20  conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a

21  jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc.*

22  *v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (quotation marks and citation

23  omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the

24  non-moving party, there is no 'genuine issue for trial.'" *Matsushita Elec. Industrial Co. v. Zenith*

25  *Radio Corp.*, 475 U.S. 574, 587 (1986) (citation omitted). The nonmoving party cannot avoid

26  summary judgment by relying solely on conclusory allegations that are unsupported by factual

27  data. *Id*. Instead, the opposition must go  beyond the assertions and allegations of the pleadings

28

1   and set forth specific facts by producing competent evidence that shows a genuine dispute of

2   material fact for trial. *Celotex*, 477 U.S. at 324.

> That being said,
> [i]f a party fails to properly support an assertion of fact or fails to properly address
> another party's assertion of fact as required by Rule 56(c), the court may: (1) give
> an opportunity to properly support or address the fact; (2) consider the fact
> undisputed for purposes of the motion; (3) grant summary judgment if the motion
> and supporting materials—including the facts considered undisputed—show that
> the movant is entitled to it; or (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e).

At summary judgment, the court's function is not to weigh the evidence and determine

the truth but to determine whether there is a genuine dispute of material fact for trial. *See*

*Anderson*, 477 U.S. at 249. While the evidence of the nonmovant is "to be believed, and all

justifiable inferences are to be drawn in its favor," if the evidence of the nonmoving party is

merely colorable or is not significantly probative, summary judgment may be granted. *Id*. at 249-

50 (citations omitted).

### III. DISCUSSION

Preliminarily, Plaintiff mentions that he has several objections pending regarding

discovery requests that he states could "further" support his motion, but that he believes he has

enough facts to support each element of his motion. (ECF No. 222 at 3-4.) Insofar as this can be

construed as a request to defer consideration of the motions under Federal Rule of Civil

Procedure 56(d), the court recommends that the request be denied. Such a request requires an

affidavit or declaration that specifies how the movant cannot present facts essential to the motion

or opposition. Fed. R. Civ. P. 56(d). Yet, Plaintiff has not stated in an affidavit or declaration the

facts he hopes to elicit from the discovery subject to objections, or how those facts are essential

to determination of the dispositive motions. *See Family Home and Finance Center, Inc. v.*

*Federal Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008) (citation omitted).

The court will now turn to the merits of the motions, and will split its discussion with

respect to: (1) Jaeger's alleged refusal to give Plaintiff the Disciplinary Form III which he

needed to perfect his disciplinary appeal; and (2) Jaeger's alleged denial of Plaintiff's emergency

grievance, and failure to enter it into NDOC's system for processing and tracking.

**A. Disciplinary Form III**

    **1. Facts**

        The following facts are undisputed unless otherwise indicated:

        Plaintiff was housed at SDCC in 2011, and at that time, Jaeger was a correctional sergeant in the administrative segregation unit in which Plaintiff was housed. (ECF No. 7 at 1; Jaeger Decl., ECF No. 231-1 ¶¶ 1, 3; ECF No. 240 at 1.)

        On September 8, 2011, Plaintiff was involved in a physical altercation with another inmate, and was subsequently charged with a disciplinary violation for assault and battery. (ECF No. 231-3 at 2.) A preliminary hearing was held, and the matter was referred for a disciplinary hearing. (ECF No. 231-3 at 3-4).

        Jaeger conducted Plaintiff's disciplinary hearing on September 30, 2011. (ECF No. 222 at 4, 5; ECF No. 222 at 32, Jaeger's response to Pl.'s First Set of Interrogatories, Interrogatory No. 4; ECF No. 222 at 41, Jaeger's response to Pl.'s Request for Admission No. 1 (set 1); ECF No. 231-3 at 5-8, Disciplinary Form III, Summary of Disciplinary Hearing; Pl.'s Ex. L, recording of disciplinary hearing OIC 335778, Side A (manually filed).) Plaintiff pled not guilty to the charges. (ECF No. 231-3 at 5; Pl.'s Ex. L, recording of disciplinary hearing OIC 335778, Side A (manually filed).) Plaintiff requested that four witnesses be called to testify during the hearing, but Jaeger denied his request. (ECF No. 231 at 3; ECF No. 231-3 at 5; Pl.'s Ex. L, recording of disciplinary hearing OIC 335778, Side A (manually filed); ECF No. 222 at 5; Jaeger Decl., ECF No. 234-1 ¶¶ 4-5.) In response, Plaintiff stated that the charging party should be called to testify according to the disciplinary hearing procedures. (Pl.'s Ex. L, recording of disciplinary hearing OIC 335778, Side A (manually filed).) Jaeger asked Plaintiff if he wanted to make a statement, and Plaintiff responded that he did not wish to make a statement. (Pl.'s Ex. L, recording of disciplinary hearing OIC 335778, Side A, (manually filed); Jaeger Decl., ECF No. 234-1 ¶ 6.) Instead, Plaintiff said: "I can't make a statement because I can't make a defense," referring to his inability to call witnesses. (Pl.'s Ex. L, recording of disciplinary hearing OIC 335778, Side A (manually filed).) Jaeger proceeded to give an explanation of the institution's position and the evidence relied on. (Pl.'s Ex. L, recording of disciplinary hearing OIC 335778, Side A (manually

filed).) Plaintiff asked Jaeger if that was Jaeger's statement, and at that point Jaeger stated they were going off record. (Pl.'s Ex. L, recording of disciplinary hearing OIC 335778, Side A (manually filed).)

The parties differ in their accounts of what occurred when they were off the record.

Plaintiff contends that he and Jaeger had a discussion regarding the errors Plaintiff thought Jaeger was making in not allowing him to call witnesses. (ECF No. 222 at 4, 123 ¶ 9.) Plaintiff claims that this exchange caused Jaeger to become upset with Plaintiff, and Jaeger stated: "You might as well be quiet and just do an appeal, because you're not going to win an argument against me." (ECF No. 222 at 123 ¶ 9.) Jaeger, on the other hand, disputes that this occurred. (ECF No. 222 at 32, Jaeger's response to Pl.'s Interrogatory No. 5.) He claims that while off the record he "reviewed the information and made [his] deliberation." (Jaeger Decl., ECF No. 231-1 ¶ 6.) Jaeger disputes that he became angry at Plaintiff for remaining silent, and acknowledges that an inmate can remain silent during the hearing and that no adverse inference may be drawn from the silence. (ECF No. 222 at 32-33, Jaeger's response to Pl.'s Interrogatory No. 7; ECF No. 222 at 42, Jaeger's response to Pl.'s Request for Admission No. 4.)

Jaeger subsequently went back on the record and asked Plaintiff to state his name, but there was no response. (Pl.'s Ex. L, recording of disciplinary hearing OIC 335778, Side B (manually filed); Jaeger Decl., ECF No. 234-1 ¶ 8.) Jaeger indicated on the record that Plaintiff refused to provide his name, and Plaintiff acknowledges his refusal to speak. (Pl.'s Ex. L, recording of disciplinary hearing OIC 335778, Side B (manually filed); ECF No. 222 at 4, 6.) Jaeger went on to find Plaintiff guilty of the assault and battery charges and recited the sanctions imposed. (Pl.'s Ex. L, recording of disciplinary hearing OIC 335778, Side B (manually filed).) Plaintiff was asked if he understood the sanctions, and there was no response. (Pl.'s Ex. L, recording of disciplinary hearing OIC 335778, Side B (manually filed).) The recording was then terminated. (Pl.'s Ex. L, recording of disciplinary hearing OIC 335778, Side B (manually filed).) Plaintiff asserts that in refusing to speak, he was invoking his First Amendment right to remain silent. (ECF No. 222 at 4.)

1    Plaintiff claims that when he continued in his refusal to respond, Jaeger ordered Senior

2    Correctional Officer Arnold to remove Plaintiff from the hearing. (ECF No. 222 at 4, 5, 6.)

3    Jaeger contends that Plaintiff was removed from the hearing after his sanctions were explained to

4    him and they had gone off the record. (ECF No. 222 at 33, Jaeger's response to Pl.'s

5    Interrogatory No. 8.)

6    Plaintiff then asserts that Jaeger refused to give him a copy of Disciplinary Form III.

7    (ECF No. 222 at 123 ¶ 10.) Jaeger, on the other hand, claims that Plaintiff refused to sign

8    Disciplinary Form III. (Jaeger Decl., ECF No. 231 ¶ 9; ECF No. 234-3 at 8.) Plaintiff asserts,

9    and Jaeger acknowledges, that Plaintiff's disciplinary appeal was rejected for failing to include

10   the Disciplinary Form III. (ECF No. 234 at 4; Ex. H, I.) Plaintiff eventually received a copy of

11   the Disciplinary Form III from Lieutenant Mustafa on November 16, 2011. (ECF No. 222 at 65,

12   69.)

13         **2. Access to Courts**

14   Preliminarily, the court finds Plaintiff is not entitled to summary judgment on this claim

15   because it is not addressed in his own motion for summary judgment. (*See* ECF No. 222 at 9-24.)

16   Instead, he only addresses his retaliation claims.

17   With respect to Jaeger's motion for summary judgment, Jaeger first argues that Plaintiff

18   has not satisfied the actual injury prerequisite of asserting an access to courts claim. (ECF No.

19   231 at 7-8.)

20   In response, Plaintiff states that in order to establish actual injury an inmate must

21   demonstrate a hindrance of his efforts to pursue a nonfrivolous legal claim; that the right of

22   access to the courts may hinge on the ability to access the prison grievance system; and that the

23   right of access to the courts includes the right to pursue administrative remedies and exhaust

24   them before he can seek relief in the courts. (ECF No. 240 at 1-2.) Plaintiff also references the

25   fact that his disciplinary appeal was rejected because he did not have the form. (*Id*. at 2.)

26   Inmates have a constitutional right of access to the courts. *See Lewis v. Casey*, 518 U.S.

27   343, 346 (1996). The access-to-courts doctrine has been tethered to the First Amendment, the

28   Equal Protection Clause, as well as the Due Process Clause of the Constitution. *See Blaisdell v.*

1   *Frappiea*, 729 F.3d 1237, 1243 (9th Cir. 2013) (citations omitted); *see also Jones v. Williams*,

2   791 F.3d 1023, 1035 (9th Cir. 2015) ("The First Amendment guarantees a prisoner a right to

3   seek redress of grievances from prison authorities as well as a right of meaningful access to the

4   courts."). "Prisoners have the 'right[] to litigate without active *interference*,' ... a guarantee that

5   exists so prisoners have a 'viable mechanism to remedy prison injustices.'" *Blaisdell*, 729 F.3d at

6   1243 (emphasis original) (quoting *Silva v. Di Vittorio*, 658 F.3d 1090, 1102 (9th Cir. 2011) and

7   *Rhodes v. Robinson*, 408 F.3d 559, 567 (9th Cir. 2005)). "The heart of the anti-interference right

8   is the presentation of constitutional, civil rights and habeas corpus claims[.]" *Id.* (citation and

9   internal quotation marks omitted).

10   Jaeger is correct that in order to establish a violation of the right of access to the courts, a

11   prisoner must establish that he or she suffered an actual injury, a jurisdictional requirement that

12   flows form the standing doctrine and may not be waived.  *Id.* at 348 (citation omitted); *see also*

13   *Alvarez v.  Hill*, 518 F.3d 1152, 1155 n.  1 (9th Cir.  2008) (citation omitted) (explaining,

14   "[f]ailure to show that a 'non-frivolous legal claim ha[s] been frustrated' is fatal" to a claim of

15   denial of access to courts).  "Actual injury" is defined as "actual prejudice with respect to

16   contemplated or existing litigation, such as inability to meet a filing deadline or present a claim."

17   *Id.*  at 348 (citation and internal quotations omitted).

18   The right of access to the courts is limited to non-frivolous direct criminal appeals,

19   habeas corpus proceedings, and § 1983 actions.  *See Lewis*, 518 U.S. at 353 n. 3, 354-55;

20   *Simmons v.  Sacramento Cnty.  Super.  Ct.*, 318 F.3d 1156, 1159-60 (9th Cir.  2003) ("a prisoner

21   has no constitutional right of access to the courts to litigate an unrelated civil claim"). The right

22   of access to the courts is only a right to bring complaints to the federal court and not a right to

23   discover such claims or to litigate them effectively once filed with a court.  *See Lewis*, 518 U.S.

24   at 354-55; *Cornett v.  Donvan*, 51 F.3d 894, 898 (9th Cir.  1995).

25   While Plaintiff references the applicable legal standards, he has not established that his

26   failure to obtain the form frustrated a non-frivolous legal claim or that it deprived him of the

27   right to bring a non-frivolous direct criminal appeal, habeas corpus proceeding or civil rights

28   claim. Plaintiff asserts he was unable to appeal his disciplinary conviction within the prison

1  channels as a result of Jaeger's failure to give him the Disciplinary Form III. Neither the

2  Supreme Court nor the Ninth Circuit has extended the right of access to the courts to apply to the

3  ability to complete a disciplinary appeal within the prison.

4          Plaintiff references a hindrance to his efforts to exhaust his administrative remedies;

5  however, it is clear that Plaintiff was not thwarted in his ability to exhaust his administrative

6  remedies. Plaintiff filed an informal level grievance asserting that Jaeger denied his due process

7  rights, and right to petition for grievances and access the courts when Jaeger refused to allow

8  him to present witness testimony and found him guilty of a disciplinary violation without this

9  evidence; refused to provide Plaintiff with a copy of the results of the disciplinary hearing; and

10  refused to allow him to file a disciplinary appeal. (ECF No. 231-9 at 2-13.) While prison officials

11  denied the grievances at all levels, treating it as a disciplinary appeal, Plaintiff completed all

12  levels of the grievance process sufficient to bring an action in this court, and did in fact do so.

13  Jaeger has not asserted that Plaintiff failed to properly exhaust administrative remedies.

14  Therefore, the court cannot conclude that the failure to provide Plaintiff with the Disciplinary

15  Form III hindered Plaintiff's ability to exhaust his administrative remedies and bring an action in

16  this court.

17          In sum, Plaintiff's motion for summary judgment should be denied as to this claim, and

18  summary judgment should be granted in Jaeger's favor.

19          **3. Retaliation**

20          The court will now address Plaintiff's retaliation claim relative to Jaeger's purported

21  refusal to give Plaintiff the Disciplinary Form III.

22          "Section 1983 provides a cause of action for prison inmates whose constitutionally

23  protected activity has resulted in retaliatory action by prison officials." *Jones v. Williams*, 791

24  F.3d 1023, 1035 (9th Cir. 2015); *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995). Such a

25  claim consists of five elements:

26          (1) An assertion that a state actor took some adverse action against an inmate
        (2) because of (3) that prisoner's protected conduct, and that such action

27          (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action
        did not reasonably advance a legitimate correctional goal.

28  *Jones*, 791 F.3d at 1035 (quoting *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005))

- 10 -

1

### a. Adverse Action

2        Plaintiff asserts that Jaeger took adverse action against him when he refused to give him

3  the Disciplinary Form III at the conclusion of his disciplinary hearing. (ECF No. 222 at 11-13.)

4  Jaeger disputes this, claiming that Plaintiff did not obtain the Disciplinary Form III because he

5  refused to sign it. (ECF No. 234 at 8; Jaeger Decl., ECF No. 234-1 ¶ 9; ECF No. 234-3 at 8[4].)

6  Plaintiff, in turn, disagrees with this, contending he could not have signed the form as he was

7  restrained with his hands behind his back, and Jaeger never gave him an opportunity to sign the

8  form. (ECF No. 240 at 3; ECF No. 241 at 2.) Both parties acknowledge that Plaintiff needed the

9  form to appeal his disciplinary conviction. (*See* ECF No. 222 at 35, Jaeger's Response to Pl.'s

10  Interrogatory No. 18; ECF No. 222 at 49, Jaeger's Suppl. Response to Pl.'s Request for

11  Admission No. 8.)

12        There is a genuine dispute of material fact as to whether Jaeger took the asserted adverse

13  action against Plaintiff.

14

### b. Because of Plaintiff's Protected Conduct

15        An inmate must submit evidence, either direct or circumstantial to establish a link

16  between the exercise of constitutional rights and the allegedly retaliatory action. *Pratt*, 65 F.3d at

17  806-07. "[A] plaintiff must show that his protected conduct was 'the "substantial" or

18  "motivating" factor behind the defendant's conduct.'" *Brodheim v. Cry*, 584 F.3d 1262, 1271

19  (quoting *Sorrano's Gasco, Inc. v. Morgan*, 874 F.2d 1310, 1314 (9th Cir. 1989)). The plaintiff

20  "need only 'put forth evidence of retaliatory motive, that, taken in the light most favorable to

21  him, presents a genuine issue of material fact as to [the defendant's] intent[.]'" *Id*. (quoting

22  *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)).

23        To raise a triable issue as to motive, plaintiff must offer "either direct evidence of

24  retaliatory motive or at least one of three general types of circumstantial evidence [of that

25  motive]." *McCollum v. Cal. Dep't of Corr. and Rehab.*, 647 F.3d 870, 882 (9th Cir. 2011)

26  (citation and quotation marks omitted). Circumstantial motive evidence may include:

27

28

---

[4] This is a copy of Disciplinary Form III. In the space for the inmate's signature it states: "Refused to sign."

1    "(1) proximity in time between protected speech and the alleged retaliation; (2) [that] the

2    [defendant] expressed opposition to the speech; [or] (3) other evidence that the reasons proffered

3    by the [defendant] for the adverse ... action were false and pretextual." *Id.* (internal citation and

4    quotation marks omitted).

5           Plaintiff maintains that Jaeger refused to give him the Disciplinary Form III because he

6    invoked his right to remain silent during the disciplinary proceeding after Jaeger denied his

7    request to call witnesses. (ECF No. 222 at 11-13.) Plaintiff points out that Jaeger refused to give

8    Plaintiff a copy of the form within minutes after Plaintiff invoked his right to remain silent. (ECF

9    No. 222 at 13.)  Jaeger does not dispute that remaining silent in a disciplinary hearing amounts to

10   protected conduct[5]; instead, Jaeger argues that Plaintiff's failure to obtain the form was not

11   because of any protected conduct, but because Plaintiff refused to sign the form. (ECF No. 231 at

12   7-10; ECF No. 234 at 8-9.)

13          In addition, Jaeger contends that Plaintiff's inability to perfect his disciplinary appeal was

14   due to his refusal to sign the Disciplinary Form III, as well as his failure to follow the

15   Administrative Regulation (AR) for submitting a disciplinary appeal because he did not include

16   the Disciplinary Form III. (ECF No. 231 at 8-9; ECF No. 234 at 8-9; Jaeger Decl., ECF No. 231-

17   1 ¶ 9.)  Jaeger notes that Plaintiff filed a disciplinary grievance without attaching a copy of

18   Disciplinary Form III, and when the disciplinary grievance was rejected on this basis, he did not

19   request a copy of the form to correct his appeal, but proceeded with his first level grievance

20   without attaching the paperwork again. (*Id.*) The first level grievance was rejected on the same

21   basis, and Plaintiff did not request a copy of the form, but filed a second level grievance without

22   it. (*Id.*) Jaeger asserts that Plaintiff waited until November 25, 2011 to submit a kite requesting a

23   copy of the form. (*Id.*) Jaeger points out that Plaintiff filed another grievance (which was

24   construed as a disciplinary appeal), but again failed to attach a copy of the form once he received

25   it. (*Id.*)

26

27   _____

28          [5] Jaeger acknowledges that pursuant to the disciplinary manual,  an inmate can remain silent during a
     hearing and no adverse inference may be drawn from the silence. (ECF No. 222 at 42, Jaeger's response to Pl.'s
     Request for Admission No. 4.)

1    In response, Plaintiff asserts that he was not required to correct Jaeger's wrongs (in
2    denying him a copy of the form), and in any event, he did request the form in his emergency
3    grievance as well as from the deputy director and warden, and a new appeal attempt would have
4    been deemed untimely under AR 740.05(8)(A)-(B). (ECF No. 240 at 6; ECF No. 241 at 3, 4.) He
5    points out that he did not even have to participate in the hearing, and if he did not, Jaeger still
6    would have been required to give him a copy of the form. (ECF No. 241 at 2; ECF No. 5 at 127
7    ("At the conclusion of the hearing, the inmate shall receive a written statement of the findings,
8    including the evidence relied upon and the sanctions imposed.").) Plaintiff also contends that
9    while Jaeger now asserts that Plaintiff refused to sign the form, Jaeger originally stated in
10   discovery that he could not recall whether he gave Plaintiff a copy of the form. (ECF No. 241 at
11   2; ECF No. 222 at 34, Jaeger's Response to Pl.'s Interrogatory No. 9.) Plaintiff notes that
12   inmates are only allowed one appeal, and he completed his appeal process on October 27, 2015.
13   (ECF No. 241 at 3; ECF No. 5 at 129, 168.) Even if the prison construed his second grievance
14   (which he labeled as a civil rights grievance) as another attempt to appeal his disciplinary
15   conviction, the prison advised him he was outside the time frame to file his disciplinary appeal.
16   (ECF No. 234-9 at 9.)

17   Jaeger spends much time arguing about the connection between the purported refusal to
18   provide Plaintiff with the Disciplinary Form III and Plaintiff's disciplinary appeal, but the court
19   reads Plaintiff's action as alleging that Jaeger retaliated against him by refusing to provide him
20   with a copy of Disciplinary Form III because he engaged in the protected conduct of remaining
21   silent in his disciplinary proceeding. Thus, Plaintiff must establish that Jaeger took adverse
22   action against him (refusing to give him the Disciplinary Form III) because he engaged in
23   protected activity (remaining silent at the disciplinary hearing). Jaeger could not have retaliated
24   against him for filing a disciplinary appeal by refusing to give him the form, because he did not
25   file the appeal until after Jaeger purportedly refused to give him a copy of the form. Moreover,
26   Jaeger is not the prison official who rejected the disciplinary appeal. The denial of the appeal is
27   instead relevant to the court's inquiry regarding chilling of First Amendment activities.

28

1    Plaintiff has presented evidence that Jaeger refused to provide him with the form just

2    minutes after Plaintiff invoked his right to remain silent during the disciplinary proceeding. In

3    addition, he has produced additional evidence that the reason proffered by Jaeger for the adverse

4    action is possibly false or pretextual. For instance, Jaeger claims that Plaintiff did not receive the

5    form because he refused to sign it, but Plaintiff points out that nothing in the prison regulations

6    states that an inmate shall not be provided with the form if he refuses to sign it. Instead, the

7    regulation (which Jaeger was aware of)[6] states that at the conclusion of the hearing, the inmate

8    shall "receive a written statement of the findings, including the evidence relied upon and the

9    sanctions imposed." (ECF NO. 5 at 127.) In addition, Plaintiff points to Jaeger's discovery

10   response where Jaeger initially took the position that he could not recall whether he gave

11   Plaintiff a copy of the form, and now takes the position that Plaintiff was not given the form

12   because he did not sign it. (ECF No. 222 at 14; ECF NO. 222 at 33, Jaeger's response to Pl.'s

13   Interrogatory No. 9.)

14   As a result, the court finds that a genuine dispute of material fact exists as to whether

15   Jaeger refused to provide Plaintiff with the Disciplinary Form III because Plaintiff engaged in

16   protected activity.

17                              **c. Chilling of First Amendment Rights**

18   "[A]n objective standard governs the chilling inquiry; a plaintiff does not have to show

19   that 'his speech was actually inhibited or suppressed,' but rather that the adverse action at issue

20   'would chill or silence a person of ordinary firmness from future First Amendment activities.'"

21   *Brodheim v. Cry*, 584 F.3d 1262, 1271 (9th Cir. 2009) (quoting *Rhodes v. Robinson*, 408

22   F.3d 559, 568-69 (9th Cir. 2005)). "To hold otherwise 'would be unjust' as it would 'allow a

23   defendant to escape liability for a First Amendment violation merely because an unusually

24   determined plaintiff persists in his protected activity.'" *Brodheim*, 584 F.3d at 1271 (quoting

25   *Rhodes*, 408 F.3d at 569).

26   Plaintiff takes the position that Jaeger's conduct chilled the exercise of his First

27   Amendment rights because he was unable to perfect his disciplinary appeal as a result of Jaeger's

28   _____

     [6] *See* ECF No. 222 at 33-34, Jaeger's response to Pl.'s Interrogatory No. 11.

1   refusal to give him the form. (ECF No. 222 at 14.) He asserts that his First Amendment rights

2   were actually chilled by Jaeger's conduct, and that Jaeger's conduct would chill or silence a

3   person of ordinary firmness from engaging in future First Amendment activities. (*Id*.)

4          Jaeger argues that Plaintiff's First Amendment activity was not chilled as he grieved this

5   issue, and has filed numerous grievances on other issues, and that a person of ordinary firmness

6   would not feel their speech had been chilled or silenced by the alleged failure to provide a copy

7   of Disciplinary Form III. (ECF No. 234 at 10.) He claims that Plaintiff was not threatened or

8   disciplined after choosing to remain silent or improperly grieving the issue, and proceeded to file

9   several grievances. (*Id*.)

10         Jaeger acknowledges that Plaintiff needed the Disciplinary Form III in order to complete

11  his disciplinary appeal. Jaeger likewise acknowledges that Plaintiff's disciplinary appeal was in

12  fact rejected because he did not have this form. This is sufficient evidence to overcome summary

13  judgment on the issue of whether Jaeger's conduct would chill or silence a person of ordinary

14  firmness from engaging in protected activities in the future.

15         While Jaeger asserts that Plaintiff kept pursuing his appeal without attaching the form,

16  this misses the point because Plaintiff claims he could not attach the form to the appeal because

17  Jaeger refused to give it to him. Jaeger also asserts that Plaintiff did not attach the form when he

18  ultimately obtained a copy of it, but Plaintiff points out that at that point he was outside the time

19  frame to submit a disciplinary appeal and was only permitted to submit one appeal pursuant to

20  the regulations. Jaeger has not established the absence of a genuine dispute of material fact on

21  this issue.

22                        **d. Advance a Legitimate Correctional Goal**

23         "[A] prisoner must show that the challenged action 'did not reasonably advance a

24  legitimate correctional goal.'" *Brodheim*, 584 F.3d at 1271 (quoting *Rhodes*, 408 F.3d at 568).

25         "[I]n determining whether a proffered legitimate penological interest is reasonably related

26  to a regulation which infringes on a prisoner's constitutional right" the court must consider the

27  "four factors set forth in *Turner v. Safley*, 482 U.S. 78," which are:

28         a 'valid rational connection' between the prison regulation and the legitimate [and
           neutral] governmental interest put forward to justify it.' If the connection between

- 15 -

the regulation and the asserted goal is 'arbitrary and irrational,' then the regulation fails, irrespective of whether the other factors tilt in its favor. In addition, courts should consider three other factors: the existence of 'alternative means of exercising the right' available to inmates; 'the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally'; and 'the absence of ready alternatives' available to the prison for achieving the governmental objectives.

*Brodheim*, 584 F.3d at 1272 (quoting *Shaw v. Murphy*, 532 U.S. 223 (2001), in turn quoting *Turner*).

Plaintiff claims that no legitimate correctional interest was furthered in not giving him the form, even if it was because he did not sign it, because the disciplinary manual requires the form to be given to the inmate in any event. (ECF No. 222 at 15.) Jaeger does not address this factor, presumably because he takes the position that he took no adverse action. It appears necessary to resolve the factual dispute about whether Jaeger took adverse action before the court can determine the relevancy of the final factor. In other words, if no adverse action was taken, the court need not reach the question of whether there is a legitimate correctional interest behind the action.

In sum, several disputed material facts preclude the court from recommending summary judgment as to either party on this claim.

### e. Qualified Immunity

"Qualified immunity protects government officials from civil damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Chappell v. Mandeville*, 706 F.3d 1052, 1056 (9th Cir. 2013) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed. 396 (1982)). Resolving the issue of qualified immunity requires a two-pronged approach: (1) whether the defendant violated a statutory or constitutional right; and (2) whether the right was clearly established at the time of the challenged conduct. *See Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014).

"Whether qualified immunity applies thus 'turns on the objective legal reasonableness of the action, assessed in light of the legal rules that were clearly established at the time it was taken.'" *Id.* (quoting *Messerschmidt v. Millender*, ---U.S. ---, 132 S.Ct. 1235, 1245, 182 L.Ed.2d

47 (2012)). "Officials must have 'fair warning' that their actions are unconstitutional." *Id.*

(citations omitted). "If an official 'reasonably believes that his or her conduct complies with the

law,' qualified immunity applies." *Id.* (quoting *Pearson v. Callahan*, 555 U.S. 222, 244, 129

S.Ct. 808, 172 L.Ed.2d 565 (2009); *Motley v. Parks*, 432 F.3d 1072, 1077 (9th Cir. 2005)

(en banc), *overruled on other grounds by United States v. King*, 687 F.3d 1189 (9th Cir. 2012)

(en banc)).

It was certainly established at the time of Jaeger's purported conduct that a prison official

cannot retaliate against an inmate for engaging in constitutionally protected activity. *See Pratt v.

Rowland*, 65 F.3d 802 (9th Cir. 1995). "If a genuine issue of material fact exists that prevents a

determination of qualified immunity at summary judgment, the case must proceed to trial."

*Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003). Here, a genuine dispute of material fact

exists as to whether Jaeger deprived Plaintiff of the form or whether Plaintiff did not obtain the

form because he refused to sign it, and as to whether Jaeger deprived Plaintiff of the form

because of his decision to remain silent for the rest of the disciplinary hearing. This precludes the

court from determining whether Jaeger is entitled to qualified immunity at this juncture.

**B. Emergency Grievance**

    **1. Facts**

The following facts are undisputed unless otherwise indicated:

After being returned to his cell following the disciplinary hearing, Plaintiff submitted an

emergency grievance. (ECF No. 231 at 3; ECF No. 231-4; ECF No. 222 at 62.) The emergency

grievance stated:

> On September 30, 2011, at approximately 1:35 p.m. I appeared before Sgt.
> Jaeger, for disciplinary hearing. After I attempted to show Sgt. Jaeger, that he was
> in of [sic] A.R. for not calling the charging employee to testify, he refuse to give
> me a copy of my disciplinary results forms, to prevent me from having the
> appropriate forms to utilize the appeals process. I'm pissed off my blood pressure
> is up and I'm a bit dizzy off and on. I want my disciplinary forms.

(ECF No. 231-4; ECF No. 222 at 62.) Jaeger responded to the emergency grievance: "Not an

emergency per AR 740. Use proper grievance procedures." (*Id.*)

NDOC Administrative Regulation (AR) 740 governs the inmate grievance procedure.

(ECF No. 231-5.) Insofar as emergency grievances are concerned, it provides: "An Emergency

1    Grievance (Form DOC-1564) received by any staff member shall be immediately delivered to

2    the shift supervisor no later than is reasonable and necessary to prevent serious injury or a breach

3    of security." (AR 740.10.1, ECF No. 231-5 at 11.) "The shift supervisor may confer with the on

4    duty medical staff, Warden or Associate Warden and, if necessary, the DDs, to determine

5    whether the grievance constitutes an emergency." (AR 740.10.2, ECF No. 231-5 at 11.) "The

6    highest-ranking staff member on duty, with the aid of an authorized Department official, shall

7    immediately take any corrective measures necessary to prevent a substantial risk of injury or

8    breach of security." (AR 740.10.3, ECF No. 231-5 at 11.)  "The Department official receiving

9    the Emergency Grievance should respond to the filing inmate no later than is necessary to

10   prevent serious injury or a breach of security." (AR 740.10.4, ECF No. 231-5 at 11.) "In the

11   event the inmate requests further review of a claim not deemed an emergency, the inmate may

12   file a grievance appeal commencing at the Informal Level." (AR 740.10.5, ECF No. 231-5 at

13   11.) "A copy of the emergency grievance will be forwarded to the Grievance Coordinator for

14   entry into OITS/NOTIS for processing and tracking purposes." (AR 740.10.6, ECF No. 231-5 at

15   11.)[7]

16          **2. Analysis**

17          Much time is spent in the briefing on these two dispositive motions, and has been spent

18   throughout the litigation of this action, focusing on whether or not Jaeger was authorized under

19   NDOC's AR 740 and SDCC's related operational procedure (OP) to respond to Plaintiff's

20   emergency grievance. Up to this point, Plaintiff has not explained how this fact is relevant to his

21   claims that Jaeger violated his First Amendment rights in allegedly interfering with ability to

22   pursue his disciplinary appeal and emergency grievance, which are the claims Plaintiff was

23   allowed to proceed with in this action.

24          Even if the court accepts that Jaeger did not have authority to respond to the grievance (a

25   point which the parties still dispute), it has no impact on his First Amendment claims. Whether

26   or not Jaeger was authorized to respond to Plaintiff's emergency grievance, he did in fact

27   _____

28          [7] Operational Procedure #740 is substantially similar with respect to the emergency grievance protocol.
     (ECF No. 248-1 at 4; ECF No. 249-1 at 4.)

- 18 -

1    respond to the emergency grievance. What is critical to Plaintiff's claims, is not whether Jaeger

2    was authorized to respond to the emergency grievance, but whether Jaeger's action interfered

3    with Plaintiff's ability to access the grievance process so as to violate his right to access the

4    courts, and whether Jaeger's conduct amounts to retaliation. The court will now address each of

5    these claims.

6                                   **a. Access to courts**

7          "The First Amendment guarantees a prisoner a right to seek redress of grievances from

8    prison authorities as well as a right of meaningful access to the courts." *Jones v. Williams*, 791

9    F.3d 1023, 1035 (9th Cir. 2015). "The right of meaningful access to the courts extends to

10   established prison grievance procedures." *Bradley v. Hall*, 64 F.3d 1276, 1279 (9th Cir. 1995),

11   *abrogated in part on other grounds in Shaw v. Murphy*, 532 U.S. 223 (2001) (citations omitted).

12   In such a case, "a prisoner's fundamental right of access to the courts hinges on his ability to

13   access the prison grievance system." *Id.*

14         The court has advised Plaintiff on many occasions that he has no right to a particular

15   grievance process or to have his grievance handled in a particular way. *Ramirez v. Galaza*, 334

16   F.3d 850, 860 (9th Cir. 2003) (citing *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988))

17   ("inmates lack a separate constitutional entitlement to a specific prison grievance procedure").

18   The court clarifies that is true under the due process clause. Plaintiff, however, is correct in

19   stating that while he does not have a due process right in how his grievances are processed, he

20   does have a First Amendment right to file a grievance, meaning that interference with the

21   grievance process (while not giving rise to a due process claim under the Fourteenth

22   Amendment) may implicate the First Amendment.  In other words, a violation of a prison's

23   regulation pertaining to the grievance process does not give rise to a due process claim, but that

24   same violation could, under certain circumstances, implicate the First Amendment if it interferes

25   with the inmate's ability to file a grievance. Thus, to succeed on this variety of First Amendment

26   claim, Plaintiff must establish interference with his ability to file a grievance.

27         The court finds Plaintiff has not done so. Under these facts, it is undisputed that Jaeger,

28   whether authorized to do so as a shift supervisor or not, denied Plaintiff's emergency grievance

on the basis that the matter he asserted was not an emergency, and directed Plaintiff to utilize the normal (non-emergency) prison grievance procedure. Plaintiff does not dispute that his emergency grievance did not raise an emergency, which AR 740 references as presenting a risk of serious injury or breach of security. (ECF No. 231-5 at 11, AR 740.10.1, 3. 4.) Jaeger's conduct, authorized or not, is consistent with the procedures outlined in AR 740, *i.e.*, if an inmate wants further review of a claim asserted in an emergency grievance that is not deemed an emergency, he is instructed to file a grievance appeal commencing at the informal level.

Jaeger did not interfere with Plaintiff's ability to file a grievance on the issue; instead, Plaintiff simply had to utilize another available procedure to file his grievance. There is no evidence that Jaeger interfered with that mechanism of filing a grievance, and therefore, no evidence of a First Amendment violation in the denial of the emergency grievance. In sum, the court cannot conclude that Jaeger's conduct stymied Plaintiff's ability to access the grievance procedure.

It is recommended that Plaintiff's motion for summary judgment should be denied as to this claim, and Jaeger's motion for summary judgment should be granted.

### b. Retaliation

"Retaliation against prisoners for their exercise of [their rights to seek redress of grievances and to access the courts] is itself a constitutional violation[.]" *Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009) (citations omitted).

Again, a prisoner asserting a First Amendment retaliation claim, must prove: (1) adverse action taken by a state actor against him; (2) because of; (3) his protected conduct, and that such action; (4) chilled his exercise of his First Amendment rights; and (5) the action did not reasonably advance a legitimate correctional goal. *Brodheim*, 584 F.3d at 1269 (citation omitted).

Plaintiff has presented no evidence that Jaeger's act of denying the emergency grievance "would chill or silence a person of ordinary firmness from future First Amendment activities." *Brodheim*, 584 F.3d at 1271 (citation and quotation marks omitted). Instead, the court finds that a person of ordinary firmness who received this response would, consistent with AR 740, file a grievance through normal (non-emergency) channels.

1    The court will now address Plaintiff's allegation that Jaeger destroyed the "canary" copy

2    of the emergency grievance that should have been forwarded to the grievance coordinator so that

3    it would not be entered into NOTIS for processing and tracking. (ECF No. 222 at 5, 7.) The only

4    evidence he points to in support of this contention is Jaeger's admission that *he* did not input the

5    grievance into NOTIS. (ECF No. 222 at 17.) Plaintiff claims this was because the grievance

6    exposed his action of refusing to give Plaintiff the disciplinary form he needed to perfect his

7    appeal. (*Id.*) While Jaeger admitted *he* did not input the emergency grievance into NOTIS, his

8    discovery response states that a review of NOTIS reveals that the emergency grievance is

9    documented in NDOC's system under grievance log number 20062931392. (ECF No. 222 at 50,

10   Jaeger's supp. response to Pl.'s Request for Admission No. 11; ECF No. 222 at 54, Jaeger's

11   supp. response to Pl.'s Interrogatory No. 19.) There is no evidence in the record to support

12   Plaintiff's allegation that Jaeger destroyed the copy of the grievance that should have been

13   forwarded to the grievance coordinator; instead, the evidence reflects that the emergency

14   grievance was in fact inputted into NDOC's system. Therefore, Plaintiff's claim that his First

15   Amendment rights were violated on this basis fails.

16        In sum, it is recommended that Plaintiff's motion for summary judgment be denied as to

17   this claim, and that Jaeger's motion be granted.

18   **C. State Law Claims**

19        Preliminarily, the court notes Plaintiff's citation to various Administrative Regulation

20   provisions concerning training on grievance procedures. (*See e.g.,* ECF No. 222 at 22-23.)

21   Plaintiff was only allowed to proceed with his State law First Amendment claim under the

22   Nevada Constitution; therefore, the court will not consider these arguments.

23        Article 1, Section 9 of the Nevada Constitution "affords no greater protection to speech

24   activity than does the First Amendment to the United States Constitution[.]" *Trans. Comm'n of*

25   *Washoe Cnty.*, 120 Nev. 712, 722, 100 P.3d 179, 187 (2004). Therefore, the State law retaliation

26   claim related to Jaeger's purported refusal to give Plaintiff Disciplinary Form III may proceed to

27   trial; however, the court recommends that summary judgment be granted in Jaeger's favor, and

28

1    that Plaintiff's motion be denied as to the remaining State law First Amendment claims for the

2    reasons stated above.

3    **D. Vexatious Litigant Provision**

4          In his motion, Jaeger includes a citation to 28 U.S.C. § 1915's provision for dismissal of

5    a case filed in forma pauperis if there is, *inter alia*, a finding that an action is frivolous or

6    malicious; the "three strikes" provision of 28 U.S.C. § 1915(g); and the court's inherent power to

7    enter vexatious litigant orders. (ECF No. 231 at 6-7.) This is not followed by any argument as to

8    why the court should deem this matter frivolous, malicious, or harassing, or any other basis for

9    entering such an order. This is not the first time the Attorney General's Office has inserted this

10   authority into a motion for summary judgment with no corresponding argument to justify the

11   entry of such an order, and the tactic is not well taken. If the Attorney General's Office believes

12   a finding of frivolity, maliciousness is warranted, or that there are grounds to support the entry of

13   a vexatious litigant order, it is advised to file a well-supported motion.

14                              **V. RECOMMENDATION**

15         **IT IS HEREBY RECOMMENDED** that the District Judge enter an order <u>**DENYING**</u>

16   Plaintiff's Motion for Summary Judgment (ECF No. 222), and <u>**GRANTING**</u> Jaeger's Motion for

17   Summary Judgment (ECF No. 231) as to all claims **EXCEPT** the section 1983 and State law

18   retaliation claims related to Jaeger's purported refusal to give Plaintiff the Disciplinary Form III.

19         The parties should be aware of the following:

20         1. That they may file, pursuant to 28 U.S.C. § 636(b)(1)(C), specific written objections to

21   this Report and Recommendation within fourteen days of receipt. These objections should be

22   titled "Objections to Magistrate Judge's Report and Recommendation" and should be

23   accompanied by points and authorities for consideration by the district judge.

24         2. That this Report and Recommendation is not an appealable order and that any notice of

25   appeal pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure should not be filed

26   until entry of judgment by the district court.

27   DATED: April 18, 2016.

28                              _____
                                WILLIAM G. COBB
                                UNITED STATES MAGISTRATE JUDGE